No. 59,376

SOUTHWEST NATIONAL BANK OF WICHITA, *Appellee,* v. ATG CONSTRUCTION MANAGEMENT, INC., *et al., Defendants*; and STAR LUMBER & SUPPLY COMPANY, INC.; and VALENTINE ROOFING AND WATERPROOFING, INC., *Appellants.*

(736 P.2d 894)

Opinion filed May 1, 1987.

*Orlin L. Wagner,* of Wichita, argued the cause and was on the brief for appellants.

*Martin R. Ufford,* of Redmond, Redmond, O'Brien & Nazar, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: This is an appeal from three real estate foreclosure proceedings which were consolidated for discovery and trial.

Between September 1983 and July 1984, the plaintiff/appellee Southwest National Bank of Wichita (Bank) made several construction loans to ATG Construction Management, Inc., (ATG) to enable ATG to build single-family dwellings. Six of these loans went into default and on October 15, 1984, the Bank filed four

foreclosure actions in the Sedgwick District Court. (Nos. 84-C-2840, -2841, -2842, and -2843.)

On that same date, the court held an ex parte hearing at the conclusion of which the court appointed Glenn Holmes, the bank vice-president, as receiver in each of the four cases. The court held notice of the appointment of a receiver should be given to all interested parties within three days and a date set for hearing within ten days, thus affording parties time to file objections to the appointment.

Numerous subcontractors were named as defendants in the various actions. Appellant Star Lumber and Supply Co., Inc., (Star Lumber) was named as a defendant in case numbers 84-C-2840, -2841, and -2843. Appellant Valentine Roofing and Waterproofing, Inc., (Valentine Roofing) was named as a defendant only in case number 84-C-2840. Defendant Superior Plumbing of Wichita, Inc., (Superior Plumbing) was a defendant in case numbers 84-C-2840 and -2841.

On October 26, 1984, Star Lumber and Valentine Roofing filed objections to the appointment of Holmes as receiver, alleging the appointment was invalid because Holmes was an interested party and seeking the appointment of a independent, qualified receiver, after a proper hearing. The Bank filed a response to these objections, stating that Holmes should be retained as receiver since there were no funds available to complete the construction projects which were the subject of the foreclosure proceedings, and since any other receiver would demand compensation, thereby reducing the available proceeds for payment of debts. The Bank further requested, if another receiver was appointed, the fees and expenses be paid by those who petitioned for the change of receiver.

A hearing on the objections to the appointment of Holmes as receiver was held on November 2, 1984. At the hearing, the district court ruled Holmes was to serve as a custodial receiver rather than as operating receiver. The court also ruled it would not appoint a new receiver unless the parties requesting the appointment were willing to "bring money from home in the event the receivership is an insolvent one and the operating receiver does not generate funds." Finally, with agreement of all parties the court continued the hearing until December 7, 1984,

to "get a better handle on whether or not there would be a reasonable probability an operating receiver would be able to pay the expenses of the receiver."

Star Lumber and Valentine Roofing failed to appear at the hearing scheduled for December 7, 1984, and the motion was treated as withdrawn.

On February 7, 1985, Star Lumber and Valentine Roofing filed counterclaims against the Bank in case numbers 84-C-2840, -2841 and -2843, alleging: (1) The Bank and ATG were joint venturers in a general construction scheme and therefore the Bank was liable for the payments to subcontractors as a co-principal; and (2) the Bank wrongfully obtained an ex parte appointment of an interested receiver and the receiver failed and neglected to discharge his duties as a receiver. It was further alleged that, in case number 84-C-2843, ATG and the Bank wrongfully induced Star Lumber into waiving its lien rights by refusing to honor a check written by ATG to Star Lumber in the amount of $29,848.59 where payment of this check was twice refused. Superior Plumbing was later permitted to join in the counterclaims of Star Lumber.

No counterclaims were filed in case number 84-C-2842. Thus, the Bank obtained a judgment of foreclosure and sale in that action and the subject property was sold before the other three actions proceeded to trial.

At trial, the parties stipulated to the validity of the Bank's promissory notes and mortgages; the Bank's records concerning the loan balances for the notes in question; the amounts of the mechanics' liens filed against the subject properties; the dates the various mortgages and mechanics' liens were filed of record; and the dates construction commenced on the three properties in question. Since these stipulations established a prima facie case as to the validity, amount, and priority of the Bank's mortgages, the Bank rested and the trial proceeded upon the defendants' counterclaims.

On December 16, 1985, the trial court issued its memorandum opinion containing extensive findings of fact and conclusions of law. It held Star Lumber and Valentine Roofing waived their objections to the appointment of Holmes as receiver when they failed to appear at the hearing on December 7, 1984. The court

further held the defendants failed to prove they had been damaged by the appointment of Holmes or that the appointment of a receiver was unnecessary. Additionally, the trial court held the defendants had failed to show the Bank and ATG were joint venturers.

Star Lumber, Valentine Roofing, and Superior Plumbing appealed the trial court's rulings. Superior Plumbing has since abandoned its appeal.

Additional facts will be discussed where relevant.

The first issue is whether the trial court erred in failing to find a joint venture existed between the Bank and ATG. The appellants argue that a joint venture existed, and therefore the Bank was liable for payments to the appellants as co-principal.

In *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.,* 226 Kan. 70, 74-76, 596 P.2d 816 (1979), this court thoroughly reviewed the law regarding joint ventures and concluded:

"In sum, the cases indicate that a joint venture is an association of two or more persons or corporations to carry out a single business enterprise for profit; it may be found in the mutual acts and conduct of the parties. Among the acts or conduct which is indicative of a joint venture, but no single one of which is controlling in the determination, are: (1) the joint ownership and control of property; (2) the sharing of expenses, profits and losses, and having and exercising some voice in determining the division of the net earnings; (3) a community of control over and active participation in the management and direction of the business enterprise; (4) the intention of the parties, express or implied; and (5) the fixing of salaries by joint agreement. The following acts or conduct have also been mentioned as being helpful, but one authority does not consider them so: (a) investment in the business of undistributed profits for the purpose of building up a substantial cash reserve; (b) the charging of losses against accumulated profits; and (c) division of undistributed profits in the event of liquidation contingent upon repayment to one of the parties of cash originally invested in capital." 226 Kan. at 76.

The liability of one engaged in a joint venture for the acts of his associates is discussed in 46 Am. Jur. 2d, Joint Ventures § 57, p. 76:

"In accordance with the general rule that each member of a joint venture acts as both principal and agent of his coventurers as to those things done within the apparent scope of the venture and for its benefit, it is held that each of several joint venturers has power to bind the others and to subject them to liability to third persons in matters which are strictly within the scope of the joint enterprise."

In the present case, the trial court determined no joint venture

existed. The scope of appellate review of a trial court's findings of fact and conclusions of law is to determine whether the findings are supported by substantial competent evidence and are sufficient to justify the conclusions of law. *Holly Energy, Inc. v. Patrick*, 239 Kan. 528, Syl. ¶ 2, 722 P.2d 1073 (1986).

The trial court concluded that ATG had sole control and direction over: (1) negotiations with prospective purchasers of homes; (2) the preparation of plans and specifications for homes to be constructed; (3) the selection of subcontractors and suppliers; and (4) the manner and schedule of construction. The court further found that title to all properties constructed by ATG and financed by the Bank (with the exception of one house which is the subject of a case not part of this appeal) was in the name of ATG. The court noted that while the Bank initially required a representative of the Bank to co-sign checks drawn on the ATG account, this practice was abandoned within thirty days and prior to the initiation of any loan which is currently the subject of litigation. Finally, the court held the property of ATG was owned solely by ATG; that there was no evidence of an agreement by the Bank to share in the profits and losses of ATG or vice-versa; nor was there any evidence the Bank exercised any voice in determining the division of the net earnings of ATG.

Appellants point to the trial testimony of Joe Driver (ATG's president), where he stated ATG had agreed with Clem Rasmussen (a loan officer at the Bank) that $10,000 from each ATG project closing was to go to the Bank and be applied to an old debt of Driver's with the Bank. Appellants argue this is evidence that the Bank and ATG shared expenses, profits, and losses.

The Bank contends that even if such an agreement were made, it is not evidence of a joint venture. Further, the Bank points out that it has never attempted to enforce this agreement and, on the two houses which realized a profit, the Bank received no funds except for the payment of principal and interest on the construction loan.

Thus, the evidence indicates no agreement was ever made by the Bank to share profits and losses with ATG. However, even if an agreement were made and executed for the Bank to receive a payment from each sale to apply on previous debt, it would not be evidence of joint control. It would merely indicate the Bank had bargained for payment of prior debt from current profit.

We affirm the trial court's ruling and hold appellants failed to establish a joint venture relationship between ATG and the Bank.

Appellants next allege the trial court improperly held they had waived their objections to the appointment of Holmes as receiver. Appellants further argue Holmes negligently conducted his duties and that they were damaged by his conduct.

K.S.A. 60-1301 *et seq.* govern the appointment of receivers. K.S.A. 1986 Supp. 60-1301 provides:

"A justice of the supreme court, a judge of the court of appeals or a district judge, or in the district judge's absence from the county a district magistrate judge, shall have authority to appoint a receiver in conformity with the provisions of K.S.A. 60-1302 and 60-1303, and amendments thereto, whose duty it shall be to keep, preserve, and manage all property and protect any business or business interest entrusted to the receiver pending the determination of any proceeding in which such property or interest may be affected by the final judgment. *A person who has an interest in property or in the outcome of the proceeding shall not be appointed or continued as a receiver if objection is made thereto by another interested party unless the judge finds and rules that such objection is arbitrary or unreasonable.*" (Emphasis added.)

Here, the appellants objected to the appointment of an interested party as receiver and, thus, the court was not permitted under K.S.A. 1986 Supp. 60-1301 to name Holmes as receiver unless it found such objection was "arbitrary or unreasonable." The court modified its order and appointed Holmes a custodial receiver, then continued the hearing on appellants' objection to Holmes' appointment to a later date, commenting those objecting to Holmes should be prepared to pay the fees of an alternate. Appellants failed to appear on the hearing date. Accordingly, the trial court determined appellants had waived their objections to the appointment of Holmes as a receiver, eliminating the necessity for a finding the objection was "arbitrary or unreasonable."

There being adequate evidence to support the trial court's findings of fact and conclusions of law, we affirm its determination that the appellants waived and abandoned their objections to the appointment of Holmes as a receiver.

Appellants next contend they are entitled to damages for the wrongful appointment of Holmes as a receiver and contend further that Holmes negligently conducted his duties and that they are entitled to receive damages resulting from that conduct.

The trial court held the fact that Holmes is an officer of the Bank does not in and of itself give rise to damages or punitive damages and the appellants cannot rely upon the statute prohibiting the appointment of an interested party as receiver to support their damage claim, since they had waived their objections. The court further held that before the appellants could be entitled to damages, they must introduce credible evidence that the appointment of a receiver was not necessary. The court then held that the appellants did not introduce such evidence.

In *Braun v. Pepper*, 224 Kan. 56, Syl. ¶ 3, 578 P.2d 695 (1978), the court held, in an action to recover damages for the wrongful ex parte appointment of a receiver, damages are recoverable if the facts, as established at trial, show that a receivership was not justified. The court further held it is not necessary for the debtor to show the appointment of a receiver was obtained maliciously and without probable cause.

Since the appellants made no showing that a receivership was not justified, the trial court properly refused to award damages for the allegedly wrongful ex parte appointment of a receiver.

However, this determination does not address the appellants' allegations that Holmes negligently performed his obligations, entitling them to compensation.

The standard of care required of a receiver is discussed at 66 Am. Jur. 2d, Receivers § 367, p. 184:

"A receiver, in caring for the property or managing the business over which he has been appointed, is bound to proceed with at least ordinary care and prudence. When he uses ordinary care and prudence, that is, the care and diligence which an ordinarily prudent man uses in handling his own estate, he has fulfilled the measure of his official duty, and is not answerable for losses which occur to the property and assets in his charge; but when he fails to exercise this degree of care and diligence, he becomes answerable for the consequences of his neglect or dereliction. He is not an insurer of the safety of the property; ordinary care is the test of his responsibility. The measure of his responsibility, therefore, is analogous to that of an administrator or guardian."

Appellants argue "any reasonable person" would have made a report and recommended to the court that the subject properties be sold and liquidated, rather than do "absolutely nothing and experience accruals of interest at the rate of $30 to $40 per day per property." Appellants further contend Holmes failed to avoid

waste and vandalism by securing the premises and that the evidence clearly shows vandalism occurred. Specifically, appellants claim two $900 patio doors were missing from one property and there were several inches of water in the basement of that same property. Testimony also indicated three 6-inch wide planks were missing from a redwood deck located on another property.

The Bank first contends there is no evidence in the record to show whether these problems occurred before or after the appointment of a receiver. Second, no evidence was introduced to show whether the value of any of the properties subject to this appeal decreased due to injury or waste after Holmes was appointed receiver. Finally, the Bank argues the property in question ultimately sold for less than the amount of the Bank's first mortgage lien and therefore any damages realized were suffered by the Bank, not the appellants.

This is a fact issue determined below by the trier of facts. On appeal we are bound by the findings of fact in the absence of a showing there was no substantial competent evidence to support the findings. Here, the appellants failed to show that the receiver did not exercise ordinary care and diligence in administering his duties. The Bank's argument, that the property sold for less then its first mortgage and thus any loss was suffered by the Bank, lacks probative value since the receiver's lack of care could have been the cause of the low selling price. Nevertheless, appellants had the duty to present evidence of the receiver's negligence and the resulting damages and they failed to do so. We hold there is no merit to this issue.

The final issue raised by appellants is whether the Bank wrongfully induced Star Lumber to waive its lien rights in case number 84-C-2843 by refusing to honor a check written by ATG to Star Lumber in the amount of $29,848.59.

Although appellants' brief is somewhat unclear on this issue, they appear to argue that because the Bank had almost continuously permitted ATG to operate under a deficit bank balance during the summer of 1984, the Bank therefore was not permitted to reject payment on a check for $29,848.59 written by ATG to Star Lumber and deposited on August 10, 1984. Star Lumber further contends the Bank improperly debited this entry to

ATG's account on August 10 and reversed the entry on August 13.

The Bank argues this issue need not be addressed on appeal since the issue was not raised at trial until closing arguments. Further, the trial court made no findings of fact or conclusions of law with respect to this issue, yet the appellants did not object to this lack of findings. Generally, a litigant must object to inadequate findings and conclusions of law in order to give the trial court an opportunity to correct them. *Burch v. Dodge,* 4 Kan. App. 2d 503, 507, 608 P.2d 1032 (1980). In the absence of an objection, omissions in findings will not be considered on appeal. *Green v. Geer,* 239 Kan. 305, 311, 720 P.2d 656 (1986).

We hold the appellants failed to make timely objection to the omission in the trial court's findings and, accordingly, the issue is not properly before us. However, even if the issue were properly before us, we would find it without merit.

K.S.A. 84-3-508(2) and 84-4-104(1)(h) provide a bank must give notice of dishonor of a check before its midnight deadline and that such deadline is midnight on the next banking day following the day a check is presented for payment. Here, the check was presented on Friday, August 10, 1984. The next banking day was Monday, August 13, 1984. The check was returned before midnight August 13. The check was again presented on August 15, 1984, and dishonored on August 16, 1984. Therefore, in both instances, it was properly dishonored by the Bank.

The judgment of the trial court is affirmed.