(805 P.2d 511)

No. 65,101

GARDEN CITY EDUCATORS' ASSOCIATION, *Appellee/Cross-Appellant,* v. BAORD OF EDUCATION, UNIFIED SCHOOL DISTRICT NO. 457, GARDEN CITY, FINNEY COUNTY, KANSAS, *Appellant/Cross-Appellee.*

Opinion filed January 25, 1991.

*Ward Loyd,* of Loyd & Owen, of Garden City, for appellant.

*David M. Schauner* and *Jonathan M. Paretsky,* Kansas-National Education Association, of Topeka, for appellee.

Before RULON, P.J., LARSON, J., and JOHN W. BROOKENS, District Judge Retired, assigned.

LARSON, J.: The Board of Education of Unified School District No. 457 (Board) and the Garden City Educators' Association (GCEA) both appeal from the trial court's decision reviewing a ruling by the Secretary of the Kansas Department of Human Resources (Secretary).

The collectively negotiated master agreement in force between GCEA and the Board for the 1987-88 school year concerning

resignations did not contain a liquidated damage clause and read as follows:

"ARTICLE VII
"RESIGNATIONS

"Section A.

"RELEASE FROM TEACHER'S CONTRACT

"Any teacher who is under contract with the District will be released from that contract only by formal action of the Board of Education. The teacher requesting the release shall make application therefor in writing to the Superintendent of Schools stating the specific reasons for the requested release. Each such request will be judged on its own merits, and a personal conference between the teacher and the Board of Education will be held at the next regularly scheduled meeting of the Board of Education following receipt of the request; provided, however, that such personal conference may be waived by mutual agreement of the teacher and the Board of Education.

"Any teacher who is not released from his/her contract by Board action shall fulfill the terms of such contract and any action by the teacher resulting in a failure to fulfill the terms of the contract shall amount to a breach of the contract and will subject the teacher to any and all legal remedies available. In the event of a breach of contract by the teacher, appropriate notation of the same will be placed in the teacher's personnel file."

The individual certified contracts between the Board and its teachers contained the following provision:

"Any teacher who has accepted a contract for the ensuing school year will be released from contract only by formal action of the Board of Education. A teacher requesting a release from contract between May 11 and June 1 will be granted a release provided a suitable replacement can be found. Each request thereaf ter will be judged on its own merits during a personal conference between the teacher and the Board of Education."

During negotiations for the 1988-89 school year, the Board suggested the addition of a liquidated damages clause to the second paragraph of Article VII and offered the following alternatives:

"March 17, 1988, proposal

"Any teacher who is not released from his/her contract by Board action shall fulfill the terms of such contract and any action by the teacher resulting in a failure to fulfill the terms of the contract shall amount to a breach of the contract and will subject the teacher to any and all legal remedies available, including but not limited to immediate payment by the teacher to the District of the sum of $750.00 as liquidated damages, which sum may be withheld by the District from any funds otherwise due to the teacher.

In the event of a breach of contract by the teacher, appropriate notation of the same will be placed in the teacher's personnel file."

"May 11, 1988, proposal

"Any teacher who is not released from his/her contract by Board action shall fulfill the terms of such contract and any action by the teacher resulting in a failure to fulfill the terms of the contract shall amount to a breach of the contract and will subject the teacher to any and all legal remedies available, including but not limited to the following liquidated damages: Immediate payment by the teacher to the district of the sum of $500.00 as liquidated damages if the contract is breached between May 11 and July 1, provided further that the amount of liquidated damages shall increase at the rate of $50.00 per month commencing July 1. All sums assessed as liquidated damages may be withheld by the District from any funds otherwise due to the teacher. In the event of a breach of contract by the teacher, appropriate notation of the same will be placed in the teacher's personnel file."

GCEA would not agree to either of the suggested liquidated damage provisions, which were not a part of the agreement reached in June of 1988 for the 1988-89 school year.

Between May 10, 1988, and the commencement of the school year/term (September 1, 1988) eighteen teachers submitted requests for resignation from their teaching contracts with U.S.D. No. 457. In each instance after June 1, 1988, the Board required a conference prior to acting upon a requested release, resulting in the following action:

| Date of Request | Name | Action | Date of Board Action |
|---|---|---|---|
| 05-09 | Linda Doubrava | Granted | 06-06 |
| 05-27 | Janet Eggleston | Granted | 06-06 |
| 05-25 | Elaine Fox | Granted | 06-06 |
| 05-24 | Dan Halling | Granted | 06-06 |
| 05-27 | Cindy Kinder | Granted | 06-06 |
| 05-31 | Shirley Letourneau | Granted | 06-06 |
| 06-03 | Nancy Wolf | Granted | 06-06 |
| 06-01 | Linda Durham | Granted | 06-06 |
| 06-22 | Debbie Gurley | $ 750.00 for release | 07-18 |
| 06-30 | Cynthia Venard | 750.00 for release (paid) | 07-18 |
| 07-18 | Kerry Sloan | 750.00 for release (paid) | 07-18 |
| 07-06 | Karen Germann | 750.00 for release | 07-18 |
| 07-27 | Tamara Peterson | 775.00 for release (paid) | 08-01 |
| 07-27 | James Younger | 775.00 for release | 08-01 |
| 07-25 | Joe Cribben | 1,000.00 for release | 08-15 |

| Date of Request | Name | Action | Date of Board Action |
|---|---|---|---|
| 07-25 | Leslie Cribben<br>Karen Felberg | 1,000.00 for release<br>upon suitable replacement<br>being found | 08-15 |
| 08-05 | Robert Creamer | 1,500.00 for release | 08-15 |

On August 26, 1988, GCEA filed a complaint with the Secretary alleging that the Board had committed a prohibited practice under the Professional Negotiations Act, K.S.A. 72-5413 *et seq.*, by unilaterally imposing a liquidated damages clause after such a clause had been negotiated for but not included in the contract. This was claimed to be a prohibited practice under K.S.A. 72-5430(b)(5) and (6).

The Board's answer contended that prior negotiations between the parties were not relevant, denied unilaterally imposing a liquidated damages clause, and contested the Secretary's authority to hear a complaint dealing primarily with the construction of an existing agreement.

Teachers Gurley, Germann, Younger, Cribben, Cribben, and administrator Creamer did not undertake teaching duties in the fall and did not pay the liquidated damages. The Board filed a complaint against each of them with the State Board of Education pursuant to K.S.A. 72-5412 and a civil suit against each of them in the Finney County District Court alleging breach of contract and requesting damages in excess of $10,000.00. The complaint and suit against Creamer was settled. The suits against the others are pending.

The Secretary determined that a prohibited practice did not occur and denied GCEA's complaint. GCEA appealed to the district court, which affirmed the Secretary's decision that a prohibited practice did not occur, but enjoined the Board from requiring "liquidated damages" for breach of contracts in the future and ordered the Board to reimburse all of the money collected from teachers requesting to be relieved from their 1988-89 contracts.

After both parties' requests to amend findings, conclusions, and judgment were denied, the Board appealed from the order award-

ing injunctive relief and monetary damages, and GCEA cross-appealed from the judgment that a prohibited practice did not occur.

*The trial court applied the appropriate scope of review.*

K.S.A. 1989 Supp. 72-5430a regarding prohibited practices complaints provides:

"(b) . . . Any action of the secretary pursuant to this subsection is subject to review and enforcement in accordance with the act for judicial review and civil enforcement of agency actions. . . .

"The action for review shall be by trial *de novo* with or without a jury in accordance with the provisions of K.S.A. 60-238 and amendments thereto, and the court may, in its discretion, permit any party or the secretary to submit additional evidence on any issue."

The Board relies on this court's opinion in *U.S.D. No. 279 v. Secretary, Kansas Dept. of Human Resources*, 14 Kan. App. 2d 248, 255, 788 P.2d 867 (1990), *aff'd in part, rev'd in part* 247 Kan. 519, 802 P.2d 516 (1990), wherein it was stated:

"Review of the Secretary's decision is taken in accordance with the Act for Judicial Review and Civil Enforcement of Agency Actions, which provides for initial review of the Secretary's action in district court. K.S.A. 1989 Supp. 72-5430a(a) and (b); K.S.A. 77-609. On appeal this court must adhere to the same standards as the district court.

'A district court may not, on appeal, substitute its judgment for that of an administrative tribunal, but is restricted to considering whether, as a matter of law, (1) the tribunal acted fraudulently, arbitrarily or capriciously, (2) the administrative order is substantially supported by evidence, and (3) the tribunal's action was within the scope of its authority.

'In reviewing a district court's judgment, as above, this court will, in the first instance, for the purpose of determining whether the district court observed the requirements and restrictions placed upon it, make the same review of the administrative tribunal's action as does the district court.' *Board of Johnson County Comm'rs v. J.A. Peterson Co.*, 239 Kan. 112, 114, 716 P.2d 188 (1986) (quoting *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, Syl. ¶¶ 1, 2, 436 P.2d 828 [1968])."

This wording from *U.S.D. No. 279* relied upon by the Board is not an accurate statement of the law.

This exact issue was determined by the Kansas Supreme Court in *U.S.D. No. 352 v. NEA-Goodland*, 246 Kan. 137, 139-40, 785 P.2d 993 (1990), which, because of its timing, may not have been available to the parties and our court in *U.S.D. No. 279*. *U.S.D. No. 352* was a prohibited practice case in which it was recognized

that although the Act for Judicial Review and Civil Enforcement of Agency Actions does apply, K.S.A. 77-621 contains the caveats, "Except to the extent that this act or another statute provides otherwise" and "K.S.A. 1988 Supp. 72-5430a specifically provides for a trial de novo to the district court in cases arising under the Professional Negotiations Act." 246 Kan. at 139.

Because of the trial de novo standard available to the trial court, it was appropriate for it to make a complete and independent review of the record in this case.

*U.S.D. No. 352* contains further directions to an appellate court when it states:

"Under K.S.A. 77-623, an appellate court is to review a district court's review of an agency action in the same manner it would review any other decision of a district court in a civil matter. 'Generally, a litigant must object to inadequate findings and conclusions of law in order to give the trial court an opportunity to correct them [Citation omitted.] In the absence of an objection, omissions in findings will not be considered on appeal.' *Southwest Nat'l Bank of Wichita v. ATG Constr. Mgt., Inc.*, 241 Kan. 257, 265, 736 P.2d 894 (1987). 'This court's review of conclusions of law is unlimited.' *Hutchinson Nat'l Bank & Tr. Co. v. Brown*, 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988). The interpretation of a statute is a question of law. It is our function to interpret a statute to give it the effect intended by the legislature. *Director of Taxation v. Kansas Krude Oil Reclaiming Co.*, 236 Kan. 450, 455, 691 P.2d 1303 (1984)." 246 Kan. at 140.

*The trial court properly ruled that the Board did not commit a prohibited practice.*

The GCEA complaint alleged the Board had committed a prohibited practice under K.S.A. 72-5430(b)(5) and (6), which provides as follows:

"It shall be a prohibited practice for a board of education or its designated representative willfully to:

. . . .

"(5) refuse to negotiate in good faith with representatives of recognized professional employees' organizations as required in K.S.A. 72-5423 and amendments thereto;

"(6) deny the rights accompanying recognition of a professional employees' organization which are granted in K.S.A. 72-5415."

The manner in which this issue was viewed by the Secretary and the trial court differs, although each reached the same result that no prohibited practice occurred.

The Secretary found:

"2. The school board's action of negotiating with teachers who desired to break their contract was consistent with Article VII of the teacher contract for the 1987-88 school year.

"3. The school board did not unilaterally change the contract when it demanded damages from teachers who desired to break their contracts, but was entirely within its rights under the contract to make such demands, because the contract specifically states that

'. . . any action by the teacher resulting in a failure to fulfill the terms of the contract shall amount to a breach of the contract and will subject the teacher to *any and all legal remedies available.*' (Emphasis added).

"4. The school board's attempts to negotiate a payment of damages with each teacher was nothing more nor less than an attempt to reach a cash settlement of the teacher's liability to the board for breach of contract."

The findings allowed the Secretary to reach the following conclusions of law:

"1. 'Legal remedies' for breach of contract as used in Article VII of the collective bargain between GCEA and the school board includes the right of the board to be reimbursed for its incidental and consequential damages in the event a teacher chooses not to fulfill his or her teaching contract.

"2. The board did not make a unilateral change in the existing teacher contract when it demanded damages from teachers for breach of contract, but was simply exercising its existing rights set out in Article VII of the contract.

"3. The U.S.D. 457 school board did not commit a prohibited practice by enforcing its existing rights under the contract.

"4. Although the GCEA and the school board negotiated and failed to reach agreement about the subject of liquidated damages for all teachers, the failure to reach agreement on the subject in collective bargaining did not result in any loss by the school board of its rights to seek damages for breach of contract against individual teachers."

The Secretary found the prohibited practice complaint to be without merit and denied GCEA's request to void the Board's negotiations with individual teachers over liquidated damages.

The trial court devoted the majority of its opinion to what it viewed as the Board's unenforceable attempt to collect liquidated damages and somewhat summarily made the following finding that a prohibited practice did not exist:

"8. As a collateral matter, plaintiff has requested the Court find the defendant's conduct amounted to a 'prohibited practice' as defined in K.S.A. 72-5430(b) (5) and (6). A review of these statutory provisions in light of the evidence presented fails to convince this Court that defendant refused to

negotiate the adopted contract in good faith or that the defendant denied any rights to those belonging to a professional employees' organization, such as plaintiff. There is no evidence before this Court regarding the negotiations preliminary to the contract other than the defendant's proposed amendments to Article VII. Similarly, the plaintiff has failed to direct the Court's attention to any specific employee right which defendant has violated or denied. A teacher's late resignation and the employer's refusal to release said teacher from his or her contract is not such property right as was anticipated by the statute. The Court in this regard, therefore, must conclude that plaintiff has failed to sustain its burden of proof on the allegation defendant committed a prohibitive practice."

*U.S.D. No. 352* instructs us that on appeal we review the trial court as in any other decision, 246 Kan. at 139, but the trial court's conclusion that GCEA failed to sustain its burden of proof is a negative finding which may require a different standard of review.

" 'The effect of a negative finding by a trial court is that the party upon whom the burden of proof is cast did not sustain the requisite burden. Absent arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion or prejudice the finding of the trial judge cannot be disturbed. An appellate court cannot nullify a trial judge's disbelief of evidence nor can it determine the persuasiveness of evidence which the trial judge may have believed.' [Citation omitted.]" *Brown v. Lang,* 234 Kan. 610, 616-17, .675 P.2d 842 (1984).

GCEA claims that the Board is, in effect, forcing the usage of its rejected proposal for liquidated damages which violates its duty to bargain in good faith and is a prohibited practice. The Board's contention is simply that it did nothing more than what it had the right to do under the negotiated contract. Once a teacher under contract desired to be released from his/her agreement a conference with the Board is required. If release is not agreed upon the failure of the teacher to fulfill the terms of the contract is a breach subjecting the teacher to legal remedies.

We lack guidance from reported Kansas cases as to what activity constitutes a prohibited practice, although the trial court, Court of Appeals, and Supreme Court all agreed in *U.S.D. No. 279* that it was a prohibited practice for the Board to reduce its unilateral contract offers by the costs it incurred in mediation and factfinding. 14 Kan. App. 2d 248, Syl. ¶ 4. GCEA offers National Labor Relations Board cases as authority, while the Board asks us to apply the ancient doctrine of merger to preclude

the consideration of prior negotiations. See *Hall v. Mullen*, 234 Kan. 1031, Syl. ¶ 3, 678 P.2d 169 (1984); *Drake v. Dodsworth*, 4 Kan. 159 (1867). We do not find either argument to be persuasive, although we agree with the Secretary and the trial court that a prohibited practice did not occur.

We were told in *U.S.D. No. 315 v. De Werff*, 6 Kan. App. 2d 77, 80, 626 P.2d 1206 (1981), that in the school year 1978-79, 39 Kansas school districts had contracts containing some form of liquidated damages provision applicable on release of a teacher from contractual obligations. Because the amount of liquidated damages, if any, would vary in every case depending on the ease or difficulty for the Board to replace a teacher seeking release from a contract, it was reasonable for the Board to propose that this case-by-case negotiation or litigation be replaced by the payment of a set amount. It is equally realistic that GCEA would decline to agree with a proposal requiring the payment of $750.00, or $500.00, to obtain the release from a contract when a comparably qualified teacher might be obtained for the position without any out-of-pocket expense to the school district.

The actions of both the Board and GCEA were consistent with the exercise of good faith negotiations. The plain wording of K.S.A. 72-5430(b)(5) is that it is a prohibited practice to "refuse to negotiate in good faith." This the Board clearly did not do. There is insufficient evidence from the stipulations to justify a finding that the Board is guilty of a grand design to obtain by coercion what could not be obtained by negotiations.

Under our scope of review the decision of the trial court could be affirmed because of the negative finding that GCEA failed in its burden of proof, or, as we choose to do, because the actions of the Board do not, as a matter of law based upon the stipulated facts, constitute a prohibited practice.

We cannot here, nor did the opinions in *U.S.D. No. 279*, lay down any bright line rule of easy future application as to when a prohibited practice occurs. Whether an act or action constitutes a prohibited practice must be determined in each case based upon the facts and their effect on the negotiation process.

*Once it was determined the Board did not commit a prohibited practice, the trial court's granting of an injunction and ordering return of settlement payments was improper.*

The wording of K.S.A. 1989 Supp. 72-5430a first states in subsection (a) that "[a]ny controversy concerning prohibited practices may be submitted to the secretary." That section then sets forth the grant of authority and power to the secretary in subsection (b) where it says:

"The secretary shall *either dismiss the complaint or determine that a prohibited practice has been or is being committed, and shall enter a final order granting or denying in whole or in part the relief sought.*" (Emphasis added.)

In *U.S.D. No. 279*, Justice Herd opined that K.S.A. 1989 Supp. 72-5430a grants broad power to the Secretary to "fashion appropriate relief when a prohibited practice has occurred." We believe that the converse of this statement must also be true and when a prohibited practice has not occurred the Secretary's power is limited to the dismissal of the complaint.

It logically follows that once the Secretary, the trial court, and our court agree that no prohibited practice occurred, there is no basis for the trial court's order granting injunctive relief and the return of negotiated for and paid monetary damages.

GCEA claims K.S.A. 77-617 as justification for the trial court's decision, while the Board cites K.S.A. 77-622 as authority that "[t]he court may award damages or compensation only to the extent expressly authorized by another provision of law." We agree with the Board's position. K.S.A. 77-603(b) makes it clear that "[t]his act creates only procedural rights and imposes only procedural duties."

A court "may not sustain or award relief beyond the authority of the administrative agency." 2 Am. Jur. 2d, Administrative Law § 755, p. 655. We hold that where the authority granted to the Secretary by the legislature is limited to dismissal or the finding of a prohibited practice and a prohibited practice does not exist, the only appropriate remedy is the dismissal of the complaint.

The breach of contract claims between the teachers and the Board may properly be determined in the pending lawsuits. The instances in which settlements were reached may not be reopened here.

The issues raised by the Board as to the constitutionality of K.S.A. 1989 Supp. 72-5230a and the extent of the Secretary's

jurisdiction were both answered in the Supreme Court opinion in *U.S.D. No. 279* and do not require further comment here.

The ruling that a prohibited practice did not occur is affirmed. The trial court's judgments enjoining the Board from assessing or attempting to collect liquidated damages and awarding damages plus interest to teachers who had paid liquidated damages are reversed.