976 F.2d 614
 HOWELL PETROLEUM CORPORATION, Plaintiff-Appellant,
v.
LEBEN OIL CORPORATION; Samson Resources Company; Samson
Resources Company, doing business as Ace Company; Charles
Schusterman; Charles O. Schusterman, as Trustee; Central
Bank and Trust Company of Tulsa, formerly known as Sunbelt
Bank and Trust, formerly known as Republic Bank and Trust
Company, as Special Trustee of the Jerome Reed Schusterman
Irrevocable Trust Dated May 3, 1977; Lynn N. Schusterman,
and Central Bank and Trust Company of Tulsa, formerly known
as Sunbelt Bank and Trust Co., formerly known as
Republic Bank and Trust Company, Co-Trustees of the Jerome
Reed Irrevocable Trust Dated May 3, 1977; Lynn N.
Schusterman and Central Bank and Trust Company of Tulsa,
formerly known as Sunbelt Bank and Trust Company formerly
known as Republic Bank and Trust Company, Co-Trustees of the
Harold Josey Schusterman's Children's Irrevocable Trust
dated May 3, 1977; Lynn N. Schusterman and Central Bank and
Trust Company of Tulsa, formerly known as Sunbelt Bank and
Trust Company, formerly known as Republic Bank and Trust
Company, Co-Trustee of the Stacey Helen Schusterman's
Children's Irrevocable Trust Dated May 3, 1977; Charles O.
Schusterman, as Trustee, and Central Bank and Trust Company
of Tulsa, formerly known as Sunbelt Bank and Trust Company,
formerly known as Republic Bank and Trust Company, as
Special Trustee of the Stacy Helen Schusterman Irrevocable
Trust Dated May 3, 1977, Defendants-Appellees.
 No. 91-6156.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 2, 1992.
 
 B.J. Rothbaum (William P. Warden, David E. Pepper and Brinda K. White on the briefs), of Linn & Helms, Oklahoma City, Okl., for plaintiff-appellant.
 J. Michael Medina (Keith F. Sellers and Darrell G. Ford with him on the brief), of Holliman, Langholz, Runnels & Dorwart, Tulsa, Oklahoma, for defendant-appellee Leben Oil Corp.
 James A. Kirk, James M. Chaney and Matthew L. Standard of Kirk & Chaney, Oklahoma City, Okl., filed a brief on behalf of non-Leben defendants-appellees.
 Before McKAY, Chief Judge, LOGAN and BALDOCK, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 Plaintiff Howell Petroleum Corporation brought a diversity action in federal district court against Leben Oil Corporation, Samson Resources Company, and others, seeking to enforce its alleged rights to a deferred working interest in certain gas and oil leases pursuant to a farmout agreement. Plaintiff alleged a right to revenues from the asserted working interest, and requested relief in the form of an accounting of all revenues defendants had received from the wells; appointment of a receiver to take possession of defendants' records, the wells, and proceeds thereof; imposition of a constructive trust of the proceeds of the wells; and "judgment against defendants for all sums attributable to Howell's deferred working interest." See Appendix to Brief of Appellant (Appellant's App.) at 8-9.
 
 
 2
 Plaintiff filed a motion for partial summary judgment seeking an order requiring that defendants account for the costs and revenues associated with the wells. The "non-Leben" defendants filed a cross-motion for summary judgment alleging, inter alia, that plaintiff's claims were barred by the statute of limitations, that the non-Leben defendants were not obligated to provide an accounting, and that plaintiff was not entitled to an equitable accounting. Defendant Leben filed a separate cross-motion for summary judgment, contending that the action by plaintiff was barred by collateral estoppel and the statute of limitations, and that Leben was not obligated to provide plaintiff an accounting.
 
 
 3
 The district court granted summary judgment for defendants, rejecting their claim of collateral estoppel but finding that the statute of limitations barred any contractual claim of plaintiff to an accounting.[1] The court further found that plaintiff failed to establish title to the deferred working interest, and therefore plaintiff had failed to establish a right to an equitable accounting. The district court issued a final judgment in the case, stating that there were "no issues or controversies remaining for the Court's determination." Id. at 356. Defendant moved to vacate the judgment, requesting that the court allow plaintiff to prove its title to the working interest, and to establish damages. The district court denied the motion. Plaintiff appeals the grant of summary judgment in favor of defendants and denial of the motion to vacate judgment.
 
 
 4
 On appeal plaintiff alleges the trial court erred in (1) granting Leben's motion for summary judgment on grounds that the statute of limitations had run on Leben's contractual obligation to account; (2) granting Leben's motion for summary judgment on the issue of equitable accounting based on its finding of no genuine issue of fact whether title in a working interest had vested in plaintiff (e.g., whether payout had occurred); and (3) refusing to allow plaintiff to prove its damages claim.[2]
 
 
 5
 * In 1968 Leben Drilling, Inc. (LDI) entered into a letter of agreement, dated July 18, 1968, for a farmout and drilling program with Austral Arkoma Company and Austral Oil Company, Inc. (Austral-Arkoma). The July 18 agreement subsequently was supplemented by a letter agreement of October 30, 1968. The agreement contained in the two documents (Farmout Agreement) provided that Austral-Arkoma would assign to LDI its interests in oil and gas leases selected by LDI from over 100,000 acres in the Arkoma Basin. Austral-Arkoma reserved a one-eighth overriding royalty interest in the assigned leases that would expire on payout, and a fifty percent deferred working interest that would vest upon payout. Payout was defined as
 
 
 6
 that point in time at which [LDI] shall have received from the production attributable to the leasehold interests which are the subject of this agreement, on a package basis, a sum equal to one hundred and fifty percent (150%) of all the costs allocable to such interests, excepting only operating expenses, lease acquisition costs incurred by [LDI] after the date of this Agreement, delay rentals, and the cost of maintaining the leases, plus the additional sum of one hundred per cent (100%) of all such excepted costs.
 
 
 7
 Appellant's App. at 14-15.
 
 
 8
 The Farmout Agreement required LDI to expend one million dollars on development drilling for the first four quarterly periods of the agreement, with an option to continue for up to three more years by committing to expending an additional one million dollars for each four-quarter period. The Farmout Agreement also required that "[LDI] shall render a quarterly statement to Austral Oil showing the monies expended in connection with the program, the amounts received by [LDI] from production, and the balance to be recovered before final payout." Non-Leben Defendants' Supp.App. (Supp.App.) tab A at 6.
 
 
 9
 The Farmout Agreement was for an initial year, with the right to renew for three additional one-year terms. Appellant's App. at 12, 30. ("The agreement of July 18, 1968 [as supplemented by letter agreement of October 30, 1968] shall remain in existence for a maximum of four (4) years from October 15, 1968, unless terminated earlier in accordance with any of the provisions thereof."). Both parties apparently performed the Farmout Agreement for two years. During that time Austral-Arkoma drilled some wells on which LDI and Austral-Arkoma entered operating agreements. The Farmout Agreement expired on October 15, 1970.[3] Apparently the last quarterly accounting statement that LDI provided to Austral-Arkoma was for the first quarter of 1971.
 
 
 10
 According to the parties' briefs, LDI went into bankruptcy sometime after the Farmout Agreement expired. The stock of LDI was purchased by Kaiser-Francis Oil Company and Samson Resources Company. Some of the leases included in the Farmout Agreement were assigned to Samson Resources Company and related individuals and entities (non-Leben defendants). The rest of the leases were retained by LDI, now Leben Oil Corporation (Leben), which was operated as a subsidiary of Kaiser-Francis.
 
 
 11
 Austral-Arkoma assigned seventy-five percent of its interest in the farmout leases to Petro-Search Exploration Corporation (Petro-Search) and twenty-five percent to Hanover Management Company; AustralArkoma then dissolved. Howell Corporation acquired Petro-Search, and the leases were assigned to Howell. Howell became aware of the 1968 Farmout Agreement sometime in 1986, and successfully brought suit in federal district court against Samson for recovery of a portion of the overriding royalty interest in some of the wells. See Case No. CIV-87-278-W, United States District Court for the Western District of Oklahoma. Howell then initiated the instant lawsuit against Leben and the non-Leben defendants, based on its asserted working interest in the leases it acquired from Petro-Search.
 
 II
 
 12
 We review the district court's grant of summary judgment de novo, applying the same standard as the trial court under Fed.R.Civ.P. 56(c). Applied Genetics Int'l Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). "Summary judgment is appropriate when there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." Russillo v. Scarborough, 935 F.2d 1167, 1170 (10th Cir.1991). Once the moving party has met its burden to show it is entitled to summary judgment, see Hicks v. City of Watonga, Okla., 942 F.2d 737, 743 (10th Cir.1991), the burden shifts to the nonmoving party to set forth specific facts demonstrating the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
 
 
 13
 * We first address plaintiff's assertion that the trial court erred in granting defendant Leben's summary judgment motion on grounds that the statute of limitations had run on Leben's contractual obligation to account. Plaintiff's contractual accounting claim was based on the provision in the Farmout Agreement that "[i]n order to determine with some degree of accuracy the status of the payout ... [LDI] shall render a quarterly statement to Austral Oil showing the monies expended in connection with the program, the amounts received by [LDI] from production, and the balance to be recovered before final payout." Supp.App. tab A at 5-6.
 
 
 14
 Plaintiff asserted that as successor to Austral Oil interests it was entitled to enforce this contractual provision against Leben, a successor to LDI. On summary judgment motion, however, Leben pointed to another contract provision that the agreement "shall remain in existence for a maximum period of four (4) years from October 15, 1968, unless terminated earlier in accordance with any of the provisions thereof." Id. at 8. Thus, Leben argued that plaintiff's action for a contractual accounting was barred by the Oklahoma five year statute of limitations for written contracts. See Okla.Stat. tit. 12, § 95.
 
 
 15
 The district court noted that plaintiff acquired Austral-Arkoma's interest in the leases in 1978, eight years after the Farmout Agreement terminated by agreement on October 15, 1970. Plaintiff did not file suit for an accounting until 1988, ten years after it acquired its interest, and eighteen years after the contract expired. The district court stated that there was no evidence of attempts by plaintiff or its predecessors in interest to enforce the contractual right to an accounting from October 1970 until 1987, when plaintiff requested payout information on wells drilled under the Farmout Agreement.[4] Therefore, the court found that the statute of limitations barred an action to enforce the contractual duty to account.
 
 
 16
 On appeal plaintiff argues that the Farmout Agreement created a continuing covenant by LDI to provide a quarterly accounting; that this covenant endured as long as any well drilled pursuant to the Farmout Agreement remained in production; that the parties must have contemplated at the time of contract that payout could occur after the Farmout Agreement expired; and that quarterly statements were needed to determine the payout status of the program. Plaintiff asserts that the only rational construction of the contract includes a continuing covenant to account until payout, and the district court was required to adopt that construction. If the requirement for regular accounting until payout was a continuing covenant, plaintiff argues, the statute of limitations does not bar plaintiff's action.
 
 
 17
 We reject plaintiff's argument. The plain language of the contract is clear--the maximum term of the contract was four years, and in fact the original parties to the Farmout Agreement explicitly terminated the agreement after only two years, in October 1970. See Okla.Stat. tit. 15, § 154 (language of contract governs interpretation if language "clear and explicit" and not absurd). Even if the agreement was ambiguous as to whether the duty to account continued, we would look to the intent of the contracting parties, as reflected in their subsequent conduct, to interpret the agreement. See Noyes v. McDonnell, 398 P.2d 838, 842 (Okla.1965). Neither Austral-Arkoma, nor its successors Petro Search or Howell, ever requested an accounting statement from 1971 until at least 1985. The parties' conduct and the Farmout Agreement itself clearly indicate that LDI's promise to provide quarterly accountings was intended to end on termination of the agreement. The trial court correctly concluded that the agreement, providing for a definite ending date, did not create a continuing covenant to account.
 
 B
 
 18
 Plaintiff also asserts that the contractual agreement to provide quarterly statements was a covenant running with the land and therefore not barred by the statute of limitations. The trial court rejected this argument, finding that although "covenants running with the land may be created by deed, conveyance or private agreement," the parties to the Farmout Agreement specifically provided for the termination of the agreement, and thus for the termination of the duty to account under the agreement. Appellant's App. at 350-51.
 
 
 19
 Plaintiff's argument that each assignment from Austral to LDI provided that the assignment was subject to the Farmout Agreement, and therefore created a covenant running with the land to make the quarterly accounting, is contrary to the plain language of the Farmout Agreement that it would terminate not more than four years from its inception. Nothing in either the assignments or the Farmout Agreement extended the quarterly accounting obligation past termination of the agreement. Furthermore, all of the lease assignments on which plaintiff relies were made before the Farmout Agreement terminated, thus the leases were subject to the agreement, but only until it ended. An enforceable covenant running with the land requires that the grantor and grantee each intended the covenant to run with the land. See Noyes, 398 P.2d at 840. The district court correctly found that the agreement was set to terminate by its own terms, and therefore the promise by the grantee, LDI, to make a quarterly accounting, was not intended to create a covenant running with the land.
 
 III
 
 20
 We next address plaintiff's claim that the district court erred in granting summary judgment for defendants on the issue of an equitable accounting. The district court relied on Dobry v. Dobry, 324 P.2d 534 (Okla.1958), for the rule that the party seeking an accounting has the burden to "place in evidence facts which reasonably tend to prove that there is a balance due." Id. at 537. The court found that plaintiff failed to produce evidence of a balance due on its asserted one-half working interest in the leases. The court noted plaintiff acquired a working interest under the Farmout Agreement only if payout had occurred on a package basis, and that plaintiff only produced evidence that two individual wells had reached payout. The court found this was not evidence that payout on a package basis had occurred. Because plaintiff produced no evidence that it owned a working interest, plaintiff did not show that it was due any balance. Therefore, based on Dobry, the court found plaintiff failed to produce evidence of an essential element of its claim, and granted summary judgment for defendants on the equitable accounting claim. The court stated that "absent the contractual duty on the part of defendants to account, the Court cannot escape the conclusion that it is [plaintiff's] task to establish its title in the deferred working interest before an accounting to establish amounts due can be ordered." Appellant's App. at 354.[5]
 
 
 21
 On appeal plaintiff asserts that it was not required to prove an amount due to be entitled to an equitable accounting, arguing that a later Oklahoma case, Arthur v. Arthur, 354 P.2d 199 (Okla.1959), implicitly overruled the Dobry requirement that one must show a balance is due to obtain an accounting. A careful reading of Dobry and Arthur convinces us that Arthur did not overrule the Dobry holding that to establish a right to an accounting in a case such as this, one must produce evidence that a balance is due. In Arthur, the Oklahoma Supreme Court found sufficient a pleading for equitable accounting that alleged (1) a confidential relationship; (2) the defendant had control over another's property and records concerning the property; (3) after a demand for an accounting defendant did not account or return the property; and (4) there was no adequate remedy at law. 354 P.2d at 204. Significantly, the defendant "had failed to account to the guardian for the property over which he had exercised control and ... large sums of money were not turned over to the guardian which had come into [defendant's] possession." Id. There was no controversy in Arthur that the defendant held property of another and there was a balance due. Compare id. at 199 (whether balance due not at issue) with Warden v. Richardson, 203 Okl. 474, 223 P.2d 338, 341 (1950) (when right to an accounting is at issue, it is plaintiff's burden to show a balance is due). We believe the district court correctly found that plaintiff was required to show a balance was due in order to establish a right to an accounting.
 
 
 22
 Plaintiff also argues that Leben did not move for summary judgment against plaintiff on the issue of whether payout had occurred, and at most the district court should have denied plaintiff's motion for partial summary judgment rather than granting summary judgment against it. We believe plaintiff knew, or should have known, that the payout issue was being raised against it in defendants' motions for summary judgment for several reasons. First, the payout issue was implicitly raised by plaintiff itself in plaintiff's motion for partial summary judgment seeking an equitable accounting because, as noted above, it was an essential element of plaintiff's claim.
 
 
 23
 Second, defendant Leben alleged total deficiency of plaintiff's payout evidence in its response to plaintiff's motion for partial summary judgment. "The Plaintiff has produced no information concerning package payout and Leben controverts the Plaintiff's allegation that payout has occurred pursuant to the terms of the Farmout Agreement." Id. at 74. Admittedly, the issue in this instance was raised defensively and not in Leben's motion for summary judgment. However, a district court in appropriate circumstances may grant summary judgment on a ground not formally raised in a summary judgment motion. See Wilder v. Prokop, 846 F.2d 613, 626 (10th Cir.1988); see also Celotex, 477 U.S. at 326, 106 S.Ct. at 2554 (district courts may "enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence"). Furthermore, in support of its summary judgment, Leben did assert that "[plaintiff] is not entitled to an accounting from Leben because [plaintiff] has produced no evidence that would prove as a matter of law that [plaintiff] currently owns the deferred working interest reserved by Austral in its assignments to [LDI]." Appellant's App. at 292. Leben then asserted that "[b]ecause [plaintiff] has not established its ownership of the Austral deferred working interest, [plaintiff] has not established a basis for equitable relief." Id. (citing Dobry ). Thus, at a minimum, defendant Leben raised the issue of plaintiff's title to the deferred working interest albeit on different grounds.
 
 
 24
 Third, and perhaps most important, the non-Leben defendants unambiguously raised the payout issue in their motion for summary judgment. The non-Leben defendants stated in their response to plaintiff's motion for partial summary judgment and in support of their own motion for summary judgment:
 
 
 25
 [Plaintiff] is also not entitled to an equitable accounting because, under Oklahoma law, a plaintiff must first produce evidence that a balance is due from a defendant before it can obtain an accounting. [Plaintiff] has made no attempt to show that a balance is due it from the non-Leben defendants. [Plaintiff] has supplied evidence concerning the payout status of only two of the wells. However, under the Farmout Agreement, the payout status of the wells was to be calculated on a package basis. Accordingly, until [plaintiff] produces some evidence that payout has occurred on a package basis it cannot obtain an accounting.
 
 
 26
 Appellant's App. at 21 (citation omitted). Earlier in the same brief defendants stated:
 
 
 27
 It has been obvious from the early stages of this suit that [plaintiff] had only the vaguest idea of the factual basis of its claims. This court even commented on the "plead now, discover later" approach adopted by [plaintiff]. [Plaintiff] has now conducted extensive discovery and still lacks a coherent factual basis for its claims.
 
 
 28
 Id. at 186 (citation omitted). Plaintiff acknowledged that the non-Leben defendants argued that plaintiff "has produced no evidence that payout has occurred on a package basis," but chose to stand on their evidence alleging payout on two wells. Id. at 225. We believe plaintiff was on notice that its evidence of payout was allegedly totally deficient and a basis for summary judgment. See generally id. at 166-68, 171-76, 187-88, 191-92 (discussing issues concerning payout).
 
 
 29
 Next we must consider whether plaintiff's evidence of payout created a question of material fact. Although defendants did not produce evidence that payout had not occurred, they pointed to a complete lack of affirmative evidence that payout had occurred, and payout was an essential element of plaintiff's case. This was sufficient to shift the burden to plaintiff "to make a showing sufficient to establish the existence of" payout. Celotex, 477 U.S. at 322, 106 S.Ct. at 2552. The instant case was filed in June 1988 and the district court granted summary judgment in February 1991. Plaintiff claims it suspected payout as early as 1986, and was involved in related litigation against one non-Leben defendant beginning in 1987. After motions for summary judgment, plaintiff did not request additional time for discovery. Plaintiff came forward with evidence claiming "payout" on two wells and argues that the trier of fact could infer payout had occurred on other wells also. Defendants pointed out, and plaintiff agrees, that payout under the Farmout Agreement had to be considered on a package basis including all wells and expenditures under the agreement and not on an individual well basis.[6] We agree that on the evidence before the district court at the time it granted summary judgment, plaintiff's evidence was wholly deficient to support an essential element of plaintiff's cause of action and summary judgment was appropriate.
 
 IV
 
 30
 Finally, plaintiff asserts that the district court erred in refusing to vacate its judgment dismissing the entire case. We will uphold a trial court's decision refusing to open or amend a judgment absent an abuse of discretion. McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir.1983).
 
 
 31
 The district court, in its order on plaintiff's motion to vacate, stated that:
 
 
 32
 This action was one for an accounting. The prayer for damages in the Second Amended Complaint was premised in [plaintiff's] alleged right to an accounting based on its alleged title. On motions for summary judgment, [plaintiff] chose not to attempt proof of its title upon which a balance was due. It sought instead to shift the burden of proof on [Plaintiff's] right to relief to defendants by forcing accounting with regard to whether title had vested. The Court held that [plaintiff] had not met its burden, and had not established its right to an accounting--a right which [plaintiff] itself placed at issue by its motion for summary judgment. This mooted the issue of damages "for all sums attributable to [plaintiff's] deferred working interest" since [plaintiff] did not prove the deferred working interest.
 
 
 33
 Appellant's App. at 433. Plaintiff argues that the grant of summary judgment for defendants on the contractual and equitable accounting issues did not preclude plaintiff from proceeding to prove payout, title, and a right to damages. This argument depends on two assertions by plaintiff: (1) that plaintiff had stated an independent cause of action for damages, and (2) that on summary judgment the court did not determine that plaintiff failed to show evidence of payout and title, but only that plaintiff failed to produce enough evidence to win summary judgment on that question.
 
 
 34
 Plaintiff contests the district court's ruling that plaintiff's entire prayer for relief, including damages, was based on a right to an accounting.[7] Plaintiff asserts that it stated "claims for a relief sounding in (1) accounting and (2) damages." Brief of Appellant at 24. A request for damages, however, does not constitute a cause of action; rather damages are a remedy for a legal wrong. See Thomas v. Casford, 363 P.2d 856, 858 (Okla.1961). Plaintiff in its brief does not identify the legal wrong for which it claims damages; it would appear that it claims that defendant is wrongfully in possession of proceeds from plaintiff's asserted one-half working interest in the oil and gas leases. To prove this claim, plaintiff would have to show that it holds title to the asserted interest, and it would have to show payout to make a prima facie showing of ownership.
 
 
 35
 The district court in considering whether plaintiff was entitled to an equitable accounting conclusively determined that plaintiff had failed to prove its title because it produced no evidence that payout had occurred. Plaintiff was therefore foreclosed from alleging any "damage" action that was dependent upon proof of title through payout.
 
 
 36
 Although plaintiff produced, on its motion to vacate, a payout analysis, the court properly refused to reconsider its summary judgment order based on this evidence not produced during the summary judgment proceedings. See Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir.1985), cert. denied, 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986); Willens v. University of Massachusetts, 570 F.2d 403, 406 (1st Cir.1978); see also Pasternak v. Lear Petroleum Exploration, Inc., 790 F.2d 828, 832 (10th Cir.1986).
 
 
 37
 AFFIRMED.
 
 
 
 [1]
 The district court also found there was no covenant running with the land that would provide plaintiff with a contractual right to an accounting
 
 
 [2]
 Both Leben and non-Leben defendants assert several grounds not reached by the district court on which they claim we can uphold summary judgment. Because of our disposition of plaintiff's claimed grounds for error, we need not reach these alternative arguments
 
 
 [3]
 Arkoma and LDI entered a separate farmout agreement on September 15, 1970, pertaining to specific leases in three Arkansas counties
 
 
 [4]
 There is evidence in the record that plaintiff inquired into the payout situation of the wells on December 5, 1985, see Supp.App. tab 13, but this date is still well beyond the statute
 
 
 [5]
 The court acknowledged that
 the task of accounting to show payout, or nonpayout, on a package basis under this drilling program would be extremely difficult. Under these facts, it is probable that an order requiring defendants to account is one which would result in lack of compliance despite best efforts, and the inability of the Court to enforce the order.
 Appellant's App. at 354.
 
 
 [6]
 Apparently the parties have been unable to even identify how many wells are involved under the Farmout Agreement. Initially plaintiff alleged approximately 41 wells were involved and possibly as many as 170 others. See Appellant's App. at 5-6, 40-44. Another time plaintiff alleged at least 39 productive wells. Id. at 53-54. Later, plaintiff identified 32 wells involved under the Farmout Agreement. Id. at 232. Attached to plaintiff's brief in support of its motion to vacate judgment, plaintiff offers an analysis alleging payout that includes analysis for 24 wells. See id. at 370-78
 
 
 [7]
 Notwithstanding plaintiff's claims following summary judgment, plaintiff in its memorandum in support of motion for partial summary judgment begins by unambiguously stating: "This is an action for an accounting...." Appellant's App. at 52