**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 24 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ASIA STRATEGIC INVESTMENT
ALLIANCES, LTD.,

      Plaintiff-Appellant/Cross-
      Appellee,

      v.

GENERAL ELECTRIC CAPITAL
SERVICES, INC. and
EMPLOYERS REINSURANCE
CORPORATION,

      Defendants-
      Appellees/Cross-
      Appellants.

Nos. 97-3236 & 97-3259
(D. Ct. No. 95-2479-GTV)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **McWILLIAMS**, and **LUCERO**, Circuit Judges.

Plaintiff Asia Strategic Investment Alliances ("Asia"), an Australian

corporation, sued General Electric Capital Services ("GE Capital") and Employers

Reinsurance Corporation. ("ERC") in the United States District Court for the

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

District of Kansas for allegedly violating a business agreement between the parties to pursue an insurance investment opportunity in China. The district court granted summary judgment for the defendants. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. Background

In 1993, Asia executives developed an alternative way for western companies to gain access to the heavily regulated Chinese insurance market. They envisioned forming an insurance joint venture between western insurance companies and the state-owned People's Insurance Company of China ("PICC"). The joint venture would be structured as a subsidiary of PICC, with western companies providing capital and holding a minority interest in the subsidiary. By taking advantage of PICC's existing license, western companies could bypass the Chinese government's multi-year waiting period for new licenses. Asia believed that the Chinese insurance market provided a good investment opportunity for western companies.

Asia identified GE Capital, a financial services company, and ERC, a reinsurance company and indirect subsidiary of GE Capital, as promising investors and approached them with the PICC joint venture idea. From July 1994 through early 1995, executives from the three companies met numerous times to discuss the proposed joint venture. GE Capital and ERC decided to end their

involvement with the project in the Spring of 1995. Asia filed suit on October 20, 1995, alleging breach of contract and claiming $61.23 million in damages. On February 5, 1997, Asia sought leave to amend its complaint to add a breach of fiduciary duty claim. The motion was referred to a magistrate judge who denied the request because it was untimely.

On January 15, 1997, after completion of discovery, the defendants moved for summary judgment. They assumed, for the purposes of the motion only, the existence of an agreement between the parties and argued that the relationship was a single joint venture "to pursue and participate in the proposed joint venture company." Appellant's App. at 51. Defendants asserted that the joint venture agreement was for an indefinite period of time and was therefore, under Kansas law, terminable at will. Defendants also argued that Asia's damage claims were not compensable as a matter of law.

Asia responded to the defendants' motion by asserting that the deal actually comprised two joint ventures: one between Asia, GE Capital, and ERC to pursue the deal with PICC, and the second between these companies and PICC to conduct insurance business in China. Asia argued the parties created the first joint venture specifically to pursue an agreement with PICC, and, under Kansas law, it was terminable only when they completed that purpose. Alternatively, Asia argued that, under defendants' single joint venture theory, the joint venture

between the parties was governed by Chinese law, which limits the duration of joint ventures to thirty years. Thus, because the joint venture had a fixed time period, it was not terminable at will. Finally, Asia asserted that its damages were legally compensable.

Defendants addressed Asia's "two joint venture" theory in their reply brief, contending that the parties' relationship failed to meet the definition of joint venture under Kansas law and that defendants were entitled to summary judgment under this theory as well. Asia did not object to defendants' argument for summary judgment on the two joint venture theory or request leave to reply to this argument.

The district court granted defendants' motion for summary judgment. It adopted the two joint venture theory and found no evidence of a first joint venture between Asia, GE Capital, and ERC. Asia appealed, alleging four grounds for error: (1) inadequate notice that the district court would rule on the two joint venture theory, which defendants did not raise in their initial motion; (2) failure of the district court to consider Asia's claim that it had an implied contract, not a joint venture agreement, with GE Capital and ERC; (3) the district court's misinterpretation of Kansas joint venture law; and (4) the inability of the magistrate judge to rule on Asia's motion to amend its complaint because the ruling involved a dispositive motion.

## II. Discussion

We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court. See Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 797 (10th Cir. 1997), cert. denied, 118 S. Ct. 342 (1997). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant. See Seymore, 111 F.3d at 797. We examine the factual record and reasonable inferences therefrom in the light most favorable to the nonmoving party. See id.

### A. Inadequate Notice

It is well-settled that a district court may grant summary judgment on grounds other than those raised in the motions as long as the nonmoving party had adequate notice that it would have to come forward with its evidence on the issue. See Howell Petroleum Corp. v. Leben Oil Corp., 976 F.2d 614, 620 (10th Cir. 1992); see also Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986) (noting that "district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to

come forward with all of her evidence"); Sports Racing Servs., Inc., v. Sports Car Club of Am., Inc., 131 F.3d 874, 892 (10th Cir. 1997) (same). Asia contends that it had insufficient notice that the court would decide the case on the two joint venture theory because defendants did not include the theory in their opening brief. We find Asia had adequate notice.

Asia itself introduced the two joint venture theory in its memorandum in support of its opposition to summary judgment. This fact distinguishes this case from those cited by Asia where the movant raised an issue for the first time in a reply brief, denying the nonmovant an opportunity to address the issue. Indeed, this is a case where the "[p]laintiff may not be heard to complain that [it] did not receive 'an adequate opportunity to respond to [a] new issue.'" Jarvis v. Nobel/Sysco Food Servs. Co., 985 F.2d 1419, 1424 (10th Cir. 1993) (quoting Prospero Assocs. v. Burroughs Corp., 714 F.2d 1022, 1028 (10th Cir. 1983) (McKay, J., dissenting)).

Asia argued that the evidence it had produced concerning the dealings between the parties established material issues of fact regarding the existence of a "first" joint venture. Asia's submitted voluminous evidence consisting of thousands of pages of documents and transcripts. Because Asia based its case on the two joint venture theory and produced its evidence accordingly, we find that Asia had ample notice and opportunity to come forward with its evidence on this

theory.  See Howell Petroleum, 976 F.2d at 620 (holding plaintiff had notice of issue when plaintiff implicitly raised it in motion for partial summary judgment and defendant responded with winning argument); cf. Sports Racing Servs., 131 F.3d at 892-93 (suggesting that, where moving party mistakenly interpreted franchise law requirements in its motion for summary judgment, nonmoving party had notice that application of the law was in question, and court's ruling based on the correct interpretation was therefore proper); Madewell v. Downs, 68 F.3d 1030, 1048 (8th Cir. 1995) (finding nonmovant had notice that Rule 12(b)(6) motion would be converted to Rule 56 motion when he offered materials outside the pleadings in response to a 12(b)(6) motion).  In addition, we find the parties have fully developed the facts in this case and that Asia suffered no prejudice. Thus, the district court appropriately granted summary judgment on the two joint venture theory.  See Wilder v. Prokop, 846 F.2d 613, 626 (10th Cir. 1988) (finding district court ruling against nonmoving party on claim arguably not raised in summary judgment motions proper because facts were fully developed and the nonmoving party suffered no prejudice).  We find the district court committed no procedural error by basing its ruling on the two joint venture theory.

**B. Asia's Claim of Implied Contract**

Appellants argue the district court erred by failing to decide whether an

implied contract existed between the parties. Asia may have arguably raised the simple "implied contract" argument in its initial complaint and in the pretrial order. However, Asia failed to raise the implied contract theory in its memorandum in support of its opposition to defendants' motion for summary judgment. In opposing summary judgment, Asia alternatively relied on the "two joint venture" theory and the "one continuing joint venture" theory. It never argued on summary judgment that the agreement with GE Capital and ERC constituted a simple contract. Instead, it consistently referred to the parties' alleged agreement as one for a joint venture.

Appellate courts will not consider points raised below but not argued or pursued in the district court, except in cases involving jurisdiction, sovereign immunity, manifest injustice, or other exceptional circumstances. See, e.g., Rademacher v. Colorado Ass'n of Soil Conservation Dists. Med. Benefit Plan, 11 F.3d 1567, 1571-72 (10th Cir. 1993); Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 721-22 (10th Cir. 1992). Underlying this rule are serious concerns about finality of judgments and judicial economy. See Okland Oil Co. v. Conoco Inc., 144 F.3d 1308, 1314 n.4 (10th Cir. 1998); Lyons, 994 F.2d at 721. The rule applies not only to the failure to raise issues at trial, but also the failure to raise issues on summary judgment or in opposition to a motion for summary judgment. See Geoffrey E. Macpherson, Ltd. v. Brinecell, Inc., 98 F.3d 1241, 1246 (10th

Cir. 1996); Rademacher, 11 F.3d at 1571.

Asia's failure to press its implied contract theory at the summary judgment stage precludes it from asserting that claim now. Even construing Asia's summary judgment filings generously, we find no direct reliance on the simple implied contract theory. The best we can say is that the implied contract argument lurks somewhere beneath the surface of Asia's memorandum. However, "vague, arguable references to [a] point in the district court proceedings do not . . . preserve the issue on appeal." Lyons, 994 F.2d at 721 (quoting Monarch Life Ins. Co. v. Elam, 918 F.2d 201, 203 (D.C. Cir. 1990). In addition, the fact that Asia may have raised the issue in its complaint or could have argued it at trial is not dispositive. Failure to raise an issue on summary judgment constitutes waiver of that issue. See Grenier v. Cyanimid Plastics, Inc., 70 F.3d 667, 678 (1st. Cir. 1995) ("Even an issue raised in the complaint but ignored at summary judgment may be deemed waived."); Vaughner v. Pulito, 804 F.2d 873, 877 n.2 (5th Cir. 1986) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal."); Lazarra v. Howard A. Esser, Inc., 802 F.2d 260, 269 (7th Cir. 1986) ("A contention included in an answer, but not pressed before the district court, may not be presented on appeal as a ground for reversal."). We find this case does not present the kind of manifest injustice or other exceptional circumstances that

would excuse Asia's waiver. Thus, we will not review the merits of its implied contract claim.

## C. Joint Venture

The district court found that, under Kansas law, no evidence supported the existence of a joint venture agreement between Asia, GE Capital, and ERC. Asia asserts that the district court erred in its interpretation of Kansas joint venture law and that, under the correct legal standard, there is sufficient evidence for a reasonable jury to find the existence of a joint venture.

Kansas law defines a joint venture as "an association of two or more persons or corporations to carry out a single business enterprise for profit; it may be found in the mutual acts and conduct of the parties." Modern Air Conditioning, Inc. v. Cinderella Homes, Inc., 596 P.2d 816, 823 (Kan. 1979); see also George v. Capital S. Mortgage Invs., Inc., 961 P.2d 32, 44 (Kan. 1998); Goben v. Barry, 676 P.2d 90, 96 (Kan. 1984). Kansas law does not define precisely the requirements of a joint venture. Instead, it merely lists various factors, none of which is singularly controlling, that are indicative of a joint venture. See Modern Air Conditioning, 596 P.2d at 823. These factors are:

> (1) the joint ownership and control of property; (2) the sharing of expenses, profits and losses, and having and exercising some voice in determining the division of the net earnings; (3) a community of control over and active participation in the management and direction of the business enterprise; (4) the intention of the parties, express or implied; and (5) the fixing of salaries by joint agreement.

Id.

Asia contends that the negotiations and meetings of the parties between July and December of 1994 created an implied agreement to operate as a joint venture, and it cites various facts that it claims provide enough evidence for a reasonable jury to conclude a joint venture was formed. Asia's facts are as follows: (1) GE Capital and ERC asked for and received a ninety day exclusivity agreement from Asia at the end of July 1994; (2) Asia funded all project efforts during the period in question; (3) ERC agreed, at a November 3, 1994 meeting, to begin funding Asia's expenses, provided Asia could arrange a meeting between ERC and a high-level PICC official to satisfy ERC that PICC was serious about its support for the project; (4) Asia prepared and presented to ERC a detailed business plan which ERC then forwarded to PICC along with a letter expressing ERC's and GE Capital's commitment in principle to the project; (5) the business plan provided for Asia to have an equity share of the insurance joint venture; (6) Asia, ERC, and GE Capital discussed strategy and kept each other apprised of their dealings regarding the project; and (7) each party contributed something different to the deal. Even taking all this evidence as true and viewing it in the light most favorable to Asia, we agree with the district court that a reasonable jury could not have found the existence of a joint venture under Kansas law.

The record indicates that, even if the parties had formed an agreement to

work toward the insurance joint venture, that agreement did not itself constitute a joint venture. Applying the Modern Air Conditioning factors, there was no joint ownership or control of property, nor was there joint fixing of salaries. In addition, the parties did not share expenses. Asia admits that it funded all project efforts, and ERC's November 3 agreement to fund Asia's future expenses was, in Asia's own words "subject to [ERC] being satisfied of the serious intent of PICC to support the insurance joint venture." Appellant's Addendum at 39. Asia arranged for a meeting with a PICC official on December 5, 1994, but after that meeting, ERC was not sufficiently satisfied to commit to the cost sharing, as it indicated in a January 17, 1995 letter to Asia. GE Capital and ERC broke off further discussions with Asia soon after this letter. Because of the conditions set forth at the November 3 meeting, the parties clearly had no agreement to share expenses prior to the December 5 meeting with the PICC official. Furthermore, ERC's actions suggest that it never agreed to share expenses after the December 5 meeting either. Even if we give Asia the benefit of the doubt and find an agreement to share expenses after the December 5 meeting, this by itself is not enough to establish a joint venture. See PulseCard, Inc. v. Discover Card Servs., Inc., 917 F. Supp. 1478, 1485 (D. Kan. 1996) (finding that sharing of expenses alone will not suffice to establish a joint venture between parties to a business contract).

Asia also provides no evidence of agreement to share profits and losses or of joint participation in the management and direction of the business enterprise. In fact, there were no profits to be had from the alleged first joint venture because its objective was simply the pursuit of a second joint venture. As for the management of the alleged business venture, the record shows that the parties discussed strategy, but we find no indication of joint decisions other than the November 3 decision to pursue a meeting with PICC and the November 3 letter from ERC to PICC expressing commitment in principle to the project. We hold that this evidence is inadequate to prove the existence of a joint venture.

Perhaps most importantly, we find insufficient evidence of the intent of the parties to form a joint venture. Asia theorizes that we must infer intent from the actions of the parties. However, those actions indicate negotiations, not agreement. No actions of the parties prior to November 3 can reasonably be construed as creating a joint venture. The initial meetings, exclusivity agreement, and efforts by both sides to keep the other informed are the kind of actions parties typically take in evaluating and negotiating a potential business deal. Asia contends that the November 3 meeting, ERC's conditional agreement to fund Asia's efforts, ERC's approval of the business plan,[1] and its letter to PICC show

---

[1]We note that the business plan only addressed the second joint venture with PICC, not the alleged first joint venture with Asia.

an agreement. We disagree. Although support for a proposal and a commitment in principle may show ERC's interest in the project, they hardly evidence an agreement to go forward in a joint venture relationship with Asia.

When we construe the evidence in the light most favorable to Asia, we find that, at best, the parties might have legally agreed to pursue the insurance joint venture and to ERC's payment of Asia's costs after December 5, 1994. No reasonable jury could find this agreement rose to the level of a joint venture. In the absence of any joint ownership, sharing of profits, joint management of the enterprise, fixing of salaries, and clear intention of the parties, we find no error in the district court's grant of summary judgment. See Southwest Nat'l Bank of Wichita v. ATG Constr. Management., Inc., 736 P.2d 894, 897 (Kan. 1987) (upholding trial court's finding that no joint venture existed between bank and general contractor where parties did not agree to share property ownership or profits); Flight Concepts Ltd. Partnership v. Boeing Co., 38 F.3d 1152, 1158 (10th Cir. 1994) (applying Kansas law and affirming summary judgment on the grounds that no joint venture was formed where parties did not jointly own property, fix salaries, share expenses or control of the project); Nature's Share, Inc. v. Kutter Prods., Inc., 752 F. Supp. 371, 383 (D. Kan. 1990) (granting summary judgment motion and finding no joint venture where parties to business contract had no agreement to share profits).

- 14 -

**D. Motion to Amend the Pleadings**

Finally, Asia claims that the assignment of its February 5, 1997 Motion for Leave to Amend Complaint to a magistrate judge constitutes reversible error because the motion was dispositive and therefore beyond the magistrate's jurisdiction as set forth in Federal Rule of Civil Procedure 72 and 28 U.S.C. § 636(b)(1)(A). The magistrate denied Asia's motion, and Asia filed no objection to the ruling with the district court. Asia's argument is foreclosed by this court's rule that failure to timely object to a magistrate's authority constitutes waiver. See In re Griego, 64 F.3d 580, 583 (10th Cir. 1995); Clark v. Poulton, 963 F.2d 1361, 1366-67 (10th Cir. 1992).[2] In Clark, this court determined that a magistrate's "jurisdiction" to hear a case was not the same as nonwaivable subject matter jurisdiction and that objections to this jurisdiction are waived if not properly raised with the district court. See 963 F.2d at 1367. Asia admits that it made no objection to the district court. Therefore, Asia has waived its right to

---

[2]Asia erroneously relies on Clark v. Poulton, 914 F.2d 1426 (10th Cir. 1990), to support its contention that magistrate jurisdiction is nonwaivable. That decision was vacated and replaced by the current rule in Clark v. Poulton, 962 F.2d 1361 (10th Cir. 1992).

raise the issue of the magistrate's authority before this court.

AFFIRMED.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge