**JOHN HANCOCK MUTUAL LIFE
INSURANCE COMPANY,**
Plaintiff–Appellee,

v.

**Debra WEISMAN, Defendant–Appellant.**

No. 93–2150.

United States Court of Appeals,
Tenth Circuit.

June 22, 1994.

---

Mark C. Meiering (Edward Ricco with him on the brief) of Rodey, Dickason, Sloan Akin & Robb, P.A., Albuquerque, NM, for plaintiff-appellee.

Steven L. Tucker of Tucker Law Firm, P.C., Santa Fe, NM (Turner W. Branch of Branch Law Firm and Steven J. Vogel, Albuquerque, NM, with him on the brief), for defendant-appellant.

Before KELLY, Circuit Judge, BARRETT, Senior Circuit Judge, and THEIS, Senior District Judge.*

THEIS, Senior District Judge.

This is a dispute concerning the validity of a disability insurance policy issued by plaintiff-appellee John Hancock Mutual Life Insurance Company ("John Hancock") to Debra Weisman, defendant-appellant. Weisman brought suit in state district court in New Mexico seeking to enforce the policy. John Hancock later brought suit in United States District Court for the District of New Mexico seeking rescission of the policy on the ground that it had issued the policy in reliance on Weisman's material misrepresentations concerning her income level. The state court action was removed to federal court, and the cases were consolidated. The district court granted John Hancock's motion for summary judgment and entered judgment in the amount of $27,720.00, which represented the amount of benefits John Hancock had paid Weisman under the policy. Weisman timely appealed.

## 1. Facts

Debra Weisman worked for a number of years as a court reporter. On March 23, 1987, she purchased a $1600 per month disability insurance policy with John Hancock. That policy is not at issue in this case, but the facts surrounding the 1987 application are relevant to this case.

In August of 1988, Weisman left her job with a court reporting firm and started her own court reporting business. On October 27, 1988, Weisman purchased a second disability insurance policy for $1000 per month from John Hancock. Weisman worked with Terence Double, a sales agent for John Hancock, in purchasing both policies. In meetings at Weisman's home, Double asked Weisman questions and filled in the answers she gave on the application forms.

Some of the questions on the applications dealt with the applicant's income. On the 1987 application, it was written that Weisman's income was $1500 per month in 1985, $2467 per month in 1986, and an estimated $2750 per month for 1987. On the 1988 application, it was written that Weisman's income was $2467 per month in 1986, $2755 per month for 1987, and an estimated $4000 per month for 1988. According to Weisman, on October 27, 1988, Double did not ask Weisman her income for 1986 or 1987. Rather, he copied that information from the 1987 application form. Moreover, Weisman contends that as to the 1988 estimate, Double asked for her gross income for her new business, and only for those months in which the business operated. Weisman claims she offered to provide her tax returns and business records, but the offer was declined. Weisman read and signed both applications.

The $4000 figure appears to be a good estimate of Weisman's gross receipts for the months of August through November of 1988. However, the application form states that "Earned income includes income before income taxes but after business expenses." Thus, the question asked for net income, not gross income. Moreover, John Hancock contends that the question asks for monthly income for the "calendar year," not for only the months in which the business was operating. Weisman's tax returns show that her

* The Honorable Frank G. Theis, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

total income for 1988 was $9817 ($818/mo.), her income for 1987 was $20,837 ($1737/mo.).

John Hancock hired a company called Equifax to conduct a follow-up interview several weeks after the initial application in order to verify the information on the application. Weisman gave Equifax the same income information that had been written on the application.

Weisman worked at her court reporting business until June 1, 1989, when she became totally disabled due to thoracic outlet syndrome, a condition affecting the fingers and wrists. John Hancock began making payments on both disability policies and continued to do so until May 31, 1991. In May 1991, Robert Martin, an employee of John Hancock received documents from the Social Security Administration which showed the discrepancies between Weisman's income for 1987 and 1988, and the amounts recorded on the disability insurance applications. The contestability period for the first disability policy had already run, so John Hancock has continued to pay benefits under that policy. Hancock attempted to rescind the second policy and demanded that Weisman return the $22,720 in benefits she had already received.

John Hancock had an internal rule that the type of disability policy Weisman purchased was available only to those earning at least $25,000 per year. There was testimony that this was only a guideline and that John Hancock had, on occasion, issued policies to persons earning less than $25,000 per year. Weisman was not aware of any such guideline or rule when she applied for the policies.

There was testimony by Janet Chou, the underwriter who worked on the second Weisman policy, that she had considered only the figures for Weisman's 1988 income and not those for 1987 or 1986. John Hancock contends that Chou meant she considered only 1988 figures in determining what sort of verification of income figures would be necessary, not in determining whether the policy was to be issued. Chou testified that she considered the income figures for all three years as they pertain to the $25,000 minimum income requirement. Chou testified further that if she had known that Weisman's income for 1987 or 1988 was less than $2000 per month, she would not have approved the policy.

Weisman contends that in granting summary judgment, the district court made several errors. First, Weisman argues that because the 1988 income figure was an estimate, it cannot be the basis of a misrepresentation claim. Second, Weisman contends that the questions regarding the applicant's income were ambiguous. Third, she argues that she should not be held responsible for any misrepresentations on the application because Double asked her the questions and filled in the form. Finally, Weisman argues that there is a genuine issue of fact as to the materiality of the 1986 and 1987 income figures given on the second application.

## 2. Standards for Summary Judgment

The Federal Rules of Civil Procedure provide that summary judgment is appropriate when the documentary evidence filed with the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact on its claim(s). Rule 56, however, imposes no requirement on the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the nonmoving party may not rest upon mere allegations or denials, but must set forth specific facts showing a genuine issue for trial, relying upon the types of evidentiary materials contemplated by Rule 56. Fed.R.Civ.P. 56(e). The court reviews the evidence on summary judgment

under the substantive law and based on the evidentiary burden the party will face at trial on the particular claim. *Anderson,* 477 U.S. at 254, 106 S.Ct. at 2513. A determination of a summary judgment motion is subject to de novo review. *MacDonald v. Eastern Wyoming Mental Health Ctr.,* 941 F.2d 1115, 1117 (10th Cir.1991).

### 3. Rescission of the policy

■ New Mexico law applies in this case. Under New Mexico law, an insurer generally has the right to rescind an insurance policy obtained as the result of an insured's material misrepresentation in applying for insurance. *Prudential Ins. Co. of America v. Anaya,* 78 N.M. 101, 104, 428 P.2d 640, 643 (1967). The misrepresentations need not have been made knowingly or fraudulently. *Id.* However, the insurer must have relied on the misrepresentations in deciding to issue the policy. *Id.*

### a. Estimate as misrepresentation

■ Weisman first argues that because the question as to 1988 income sought an estimate, her answer cannot constitute a misrepresentation. Weisman compares her situation to that of an opinion or a prediction of future events, which generally cannot be the basis of a fraud claim. *Continental Potash, Inc. v. Freeport–McMoran, Inc.,* 115 N.M. 690, 703, 858 P.2d 66, 79 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1064, 127 L.Ed.2d 383 (1994). However, an opinion or prediction can be a misrepresentation to the extent that is a misstatement of the facts underlying it. *See Register v. Roberson Constr. Co., Inc.,* 106 N.M. 243, 245, 741 P.2d 1364, 1367 (1987).

■ In this case Weisman's estimate that her net monthly income for 1988 was $4000 was not based on the correct facts. In truth, Weisman did not net $4000 in any month of 1988 and had gross proceeds in that amount only for the last few months of the year. In an action for rescission, it is immaterial whether the misrepresentation was made innocently, negligently, or fraudulently. *Prudential,* 78 N.M. at 104, 428 P.2d at 643. Therefore, Weisman's incorrect estimate of her 1988 income was a misstatement and can

be the basis of a claim for rescission. Furthermore, the 1987 income figure was not an estimate, but rather a representation of past events.

### b. Ambiguity of the income questions

■ Weisman next contends that the application's income questions were ambiguous. First, Weisman argues that it is unclear whether the application asks for gross or net income. The form states: "Note: Earned Income includes income before income taxes but after business expenses." Weisman argues that the word "includes" is not a definitional or limiting term and that it is therefore ambiguous. Weisman cites *Exxon Corp. v. Lujan,* 730 F.Supp. 1535, 1545 (D.Wyo.1990), *aff'd,* 970 F.2d 757 (10th Cir.1992) ("The use of the word "includes" rather than "means" in a definition indicates that what follows is a nonexclusive list which may be enlarged upon.") and *Federal Power Comm'n v. Corporation Comm'n,* 362 F.Supp. 522, 544 (W.D.Okla.1973) ("'Includes' is a verb of enlargement and not a verb of limitation or of enumeration."), *aff'd,* 415 U.S. 961, 94 S.Ct. 1548, 39 L.Ed.2d 863 (1974). According to Weisman, the form states that net income is *included* in earned income, but it does not state that other figures (i.e., gross income) are *excluded.* Although the word "includes" can be ambiguous in some circumstances, it is not in this case because the remainder of the sentence unambiguously excludes gross income. The form plainly requests income after business expenses, not gross income.

■ Weisman next argues that asking for "current" monthly income is ambiguous as to someone who has started a new business during the year. Weisman contends that if John Hancock wanted an average monthly income figure, the word "average" should have been used instead of the word "current." Again, in context the term is not ambiguous. The form asks for monthly earned income for the "current calendar year." A footnote tells the applicant to "Estimate for full calendar year." Any interpretation that the form asks for an estimate for only the months in which the new business was operating is unreasonable.

### c. Responsibility for misrepresentations

■ Next, Weisman contends that she is not responsible for any misrepresentations on the application. Weisman argues that because Terence Double filled in the numbers on the form, any misrepresentations were made by him. Weisman cites *Jackson Nat'l Life Ins. Co. v. Receconi*, 113 N.M. 403, 827 P.2d 118 (1992), for the proposition that if an insurance agent completes the application forms, the insured is not responsible for misrepresentations. Weisman overstates the holding of *Jackson National*. In *Jackson National*, the agent spoke to the applicant, then completed the form outside the applicant's presence and instructed his secretary to sign the applicant's name to the form. *Id.* at 407, 827 P.2d at 122. The New Mexico Supreme Court held that although the applicant had authorized the agent to fill out the form, he had not authorized the agent to misrepresent the facts. *Id.*

> "If the agent does not submit the application to the prospective insured for review and signature, so that the insured can be charged with the knowledge of the contents of the application, the insurer cannot escape liability under the ensuing insurance policy on the ground that the insured 'misrepresented' facts that the agent has inserted in, or omitted from the application."

*Id.* This case is clearly distinguishable. Unlike the situation in *Jackson National*, Double wrote the numbers Weisman gave him in Weisman's presence, and Weisman concedes that she read and signed the form herself. Therefore, Weisman does not escape responsibility merely because Double completed the form.

■ Weisman also contends that Double is responsible for her misrepresentation as to 1988 income because Double asked her for gross income. In *Ellingwood v. N.N. Investors Life Ins. Co., Inc.* 111 N.M. 301, 307, 805 P.2d 70, 76 (1991), the New Mexico Supreme Court held that an insurance policy "is the product of the representations of the agent that reasonably have been relied upon and accepted by the applicant." In that case, the court held that the applicant could have reasonably believed the agent had the authority to grant immediate coverage although the application indicated company approval was required. *Id.* The court recognized that in the real world, people purchasing insurance rely on insurance agents to explain the terms of the policy. *Id.* Here, however, there is not a genuine issue of fact as to reasonable reliance. The questions in this case dealt with the applicant's own income, a matter certainly within her own knowledge. To the extent that Weisman relied upon Double that the application called for gross income and only for the months during which her business operated, such reliance was unreasonable. At any rate, Weisman's reasonable reliance argument applies only to the estimate of 1988 income because her income for 1987 was fixed at the time of the second application.

■ Weisman also contends that John Hancock is estopped from raising the issue of misrepresentation because it did not examine her tax returns and financial records to verify the information she had provided to Double. There are cases in which the courts have held that the insurance company has a duty to inquire beyond the representations in the application. *E.g., Ellingwood*, 111 N.M. at 307–08, 805 P.2d at 76–77. However, in those cases, there were sufficient discrepancies on the application itself to put the insurance company on inquiry notice of the misrepresentations. *Id.* In this case, nothing about Weisman's answers to the income questions would put the insurance company on notice that she had not correctly answered the questions. Furthermore, John Hancock employed Equifax to seek verification of Weisman's responses. Therefore, John Hancock is not estopped because of its failure to investigate further.

### d. Materiality of misrepresentations

Weisman does not dispute that any misrepresentation of 1988 income was material. However, Weisman argues that the misrepresentation concerning 1987 income was immaterial. Weisman relies upon certain deposition testimony of Janet Chou, an underwriter for John Hancock, that Chou considered only the figure given for Weisman's 1988 income. However, it is clear that the portion

of Chou's testimony cited concerned the need for verification. At other points in her deposition, Chou stated that in deciding whether to issue the second policy, Chou considered Weisman's income from 1987 and 1988.

 A misstatement is material if the insurer would have rejected the risk if it had known the true facts. *Prudential,* 78 N.M. at 105, 428 P.2d at 644. There is no doubt that an applicant's income level is material to deciding the amount of disability insurance to provide. In this case, for example, Weisman's two insurance policies were to provide her $2600 per month in the event of disability. This was significantly more than she earned each month during her last years in the work force. In fact, Weisman was nearly fully covered by the first policy alone. Chou testified that there was a minimum yearly income requirement of $25,000 for the type of policy Weisman purchased. In none of the three previous years had Weisman earned close to that amount. Weisman argues that she did not know about the minimum income requirement. However, Weisman's knowledge is irrelevant. The sole question for determining the materiality of the misrepresentation is whether John Hancock would have issued the second disability policy if it had known Weisman's income level. There is no genuine dispute that John Hancock would have rejected the risk if it had been given the true facts. The district court properly granted summary judgment.

### 4. Appellee's motion to supplement the record

 John Hancock moves to supplement the record on appeal to include Weisman's 1986 tax returns. John Hancock seeks to show that Weisman misrepresented her 1986 income as well as her 1987 and 1988 income. The court denies the motion. The evidence which John Hancock seeks to introduce was not part of the record before the district court. This court has held that it cannot, in reviewing a ruling on summary judgment, consider evidence not before the district court. *Allen v. Minnstar, Inc.,* 8 F.3d 1470,

1475 (10th Cir.1993). The district court did not base its decision to grant summary judgment on Weisman's statement of 1986 income, but rather only on the material misrepresentations as to 1987 and 1988 income.

The judgment of the district court is **AFFIRMED.** The appellee's motion to supplement the record on appeal is **DENIED.**