**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 10 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BENJAMIN J. ROSCOE;
GERALDINE M. ROSCOE,

    Plaintiffs-Appellants,

v.

FEDERAL HOME LOAN
MORTGAGE ASSOCIATION; BANK
UNITED OF TEXAS FSB,

    Defendants-Appellees.

No. 99-2234

(D.C. No. CIV-98-1500-BB/LFG)
(D.N.M.)

---

**ORDER AND JUDGMENT** *

---

Before **ANDERSON, KELLY** and **BRISCOE,** Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Pro se plaintiffs Benjamin J. Roscoe and Geraldine M. Roscoe ("the

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Roscoes") sued the defendants, Federal Home Mortgage Association ("Freddie Mac") and Bank United of Texas, FSB ("Bank United"), in New Mexico state court. The crux of the Roscoes' complaint was that the defendants unlawfully "extracted" a financial premium when the Roscoes prepaid a loan. After the defendants removed the case to federal court, the district court denied the Roscoes' motion for a default judgment and granted the defendants' motion for judgment as a matter of law. We affirm.

## I.

This litigation stems from a "Loan Agreement" ("Agreement") signed by the Roscoes and Bank United on June 28, 1994. Through the Agreement, the Roscoes obtained a 20-year loan from Bank United in the amount of $2,325,000. The purpose of the loan was to refinance apartment property owned by the Roscoes in Albuquerque, New Mexico ("apartment property"). The apartment complex on this property contains more than 100 units. The Agreement contained the following provision:

> WHEREAS, [the Roscoes] shall of even date herewith execute and deliver to [Bank United] certain loan documents including, without limitation, a Multifamily Note with attachments . . . and a Multifamily Mortgage, Assignment of Rents and Security Agreement with attachments . . . (the Note, the Mortgage, and all other documents evidencing, securing, and relating to the Note are collectively referred to herein as the "Loan Documents") . . . .

Record on Appeal ("ROA"), Doc. 23, Exh. 4, at 1. The parties acknowledged in

the Agreement that Freddie Mac would "purchase the [l]oan and take an assignment of the Loan Documents in accordance with the Freddie Mac Multifamily Guide and the terms of Freddie Mac's commitment letter dated May 31, 1994 . . . ." Id.[1]

In compliance with the terms of the Agreement, the Roscoes executed a Multifamily Note ("Note"). The Note incorporated by reference a "Rider to Multifamily Note (Prepayment Premium\Yield Maintenance)" ("Rider"). Id., Exh. 6, at 2. This Rider explained that a "prepayment premium" would be calculated and assessed if the Roscoes prepaid the loan. The Roscoes signed the Rider and agreed to waive "any right to prepay the [l]oan in whole or in part prior to the maturity date of the Note, except as expressly provided" in the Rider. Id., Exh. 7, at 1-3. The Roscoes also acknowledged in the Rider that "in the event of any such prepayment," Bank United

> shall be entitled to damages for the detriment caused thereby, but . . .
> it is extremely difficult and impractical to ascertain the extent of
> such damages. Borrower [i.e., the Roscoes] therefore acknowledges

---

[1] On June 2, 1994, Bank United sent a letter agreement to the Roscoes. The letter agreement included a copy of Freddie Mac's May 31, 1994 "commitment letter" and stipulated (among other things) that (1) Bank United would sell the loan to Freddie Mac and (2) the Roscoes could prepay the note in accordance with Freddie Mac's requirements "together with the payment of a prepayment premium calculated pursuant to [Freddie Mac's] form yield maintenance formula with a yield maintenance period of ten (10) years." The Roscoes signed the letter agreement on June 7, 1994. ROA, Doc. 23, Exh. 3, at 1-2, 6.

and agrees that the prepayment premiums set forth in this Rider represent reasonable estimates of such damages to [Bank United], which sum Borrower agrees to pay upon demand. Borrower acknowledges that the prepayment premium provisions of this Rider are a material part of the consideration for the [l]oan.

Id. at 3.

In 1996, the Roscoes decided to refinance the apartment property again. To obtain another loan from a different lender, the Roscoes made a business decision to prepay the Bank United loan. Id., Exh. 1, at 87-89. Before they made the prepayment, the Roscoes received a "payoff quote" from Bank United indicating that the premium (or "prepayment penalty") would be $394,684.39. Id., Exh. 9. The Roscoes paid the premium but still received over $1,000,000 in cash from the new loan proceeds after payment of the Bank United loan. Id., Exh. 1, at 119-20; Exh. 10.

The Roscoes filed suit against Bank United and Freddie Mac in 1998. Seeking a refund of the prepayment premium plus interest and damages, the Roscoes attempted to assert eight claims. The Roscoes alleged in their state court complaint that (1) the Rider was an impermissible and unenforceable "amendment" to the Agreement; (2) Freddie Mac was unjustly enriched by its receipt of the prepayment premium; (3) their promise to pay the prepayment premium lacked consideration; (4) the terms of the Rider were vague, ambiguous, and contrary to state law; (5) the Rider was an "illegal promise" because "[t]he

4

formula for determining the prepayment premium" revolved around "outcomes of events which depend on chance;" (6) the amount of the prepayment premium was unconscionable and in violation of the implied covenant of good faith and fair dealing; (7) Bank United's use of the Rider constituted "consumer fraud" and a "deceptive business practice" under New Mexico's Unfair Practices Act; and (8) Freddie Mac tortiously interfered with the Roscoes' Agreement by inducing Bank United to breach the contract. Id., Doc. 1, Exh. A, at 1-9.

Freddie Mac removed the case to federal court pursuant to 12 U.S.C. § 1452(f). [2] Id., Doc. 1, at 1-2. Shortly thereafter, the Roscoes filed a motion for default judgment. The Roscoes asserted in the motion that Bank United and Freddie Mac were served with process on November 12, 1998, but failed to respond to the complaint within 30 days. Id., Doc. 6, at 1. The district court

_____

[2] Section 1452(f) provides that "all civil actions" to which the Federal Home Loan Mortgage Corporation ("Corporation") is a party "shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such actions, without regard to amount or value . . . ." The statute further provides that:

> any civil or other action, case or controversy in a court of a State, or in any court other than a district court of the United States, to which the Corporation is a party may at any time before the trial thereof be removed by the Corporation, without the giving of any bond or security, to the district court of the United States for the district and division embracing the place where the same is pending . . . by following any procedure for removal of causes in effect at the time of such removal.

denied the motion, holding that (1) the 30-day time period did not begin on November 12, 1998 because the Roscoes did not receive an "acknowledgment of service" from the defendants as required by New Mexico Rule of Civil Procedure 1-004(E); [3] and (2) the defendants answered the complaint even though the service effected by the Roscoes was inadequate, thus rendering the answers timely. Id., Doc. 30, at 1-2. The Roscoes then moved for reconsideration or permission to file an interlocutory appeal. Id., Docs. 41-42. The Roscoes later withdrew this motion, stating that upon reflection they believed the order denying their request for a default judgment "[wa]s well within the Court's discretion and [wa]s correct and just." Id., Doc. 43, at 1.

In the meantime, Bank United filed a motion for summary judgment. Id., Docs. 22-23. Freddie Mac adopted Bank United's motion in toto, adding a single

---

[3] Rule 1-004(E) states in relevant part:

A summons and complaint may be served upon a defendant . . . by mailing a copy of the summons and of the complaint (by first-class mail, postage prepaid) to the person to be served, together with two (2) copies of a notice and acknowledgment conforming with the form set out below and a return envelope, postage prepaid, addressed to the sender. If no acknowledgment of service under this subdivision of this rule is received by the sender within twenty (20) days after the date of mailing, service of such summons and complaint shall be made by a person . . . . Unless good cause is shown for not doing so, the court shall order the payment of the costs of personal service by the person served if such person does not complete and return within twenty (20) days after mailing the notice and acknowledgment of receipt of summons. . . .

6

undisputed fact: Before the Roscoes obtained the Bank United loan, they prepaid a prior loan on the apartment property and, as a consequence, paid a separate prepayment premium to Freddie Mac. Id., Docs. 36, 40; Doc. 44, at 2. The district court granted the defendants' motions, concluding that (1) the Agreement, including the attached Rider, was a valid contract, id., Doc. 49, at 5-6; (2) the Rider was incorporated by reference and therefore was not an "amendment" to the contract, id. at 7; (3) the prepayment provision of the Agreement was enforceable under New Mexico law, id. at 7-8; and (4) the amount of the prepayment premium was not unconscionable, tantamount to "unjust enrichment," or otherwise illegal. Id. at 9-10. Even though the defendants did not specifically address the Unfair Practices Act in their motions, the district court entered summary judgment sua sponte on that claim because the Roscoes failed to identify any false, deceptive, or misleading statements. Id. at 10-11.

## II.

The Roscoes present four arguments on appeal. They contend that the district court (1) lacked jurisdiction over the case and should have remanded the dispute to state court; (2) improperly denied their motion for a default judgment; (3) improperly granted the defendants' motions for summary judgment; and (4) should have granted summary judgment in the Roscoes' favor on all claims "conceded" by the defendants.

7

### A. Jurisdiction and Removal

The Roscoes' challenge to the district court's jurisdiction is twofold. First, they contend that the state court record was not transmitted to the district court. According to the Roscoes, the absence of these documents should have prevented the district court from exercising jurisdiction. Second, they point to the district court's language in the order denying their motion for a default judgment that the "attempted service by mail" on Bank United and Freddie Mac was "ineffective." Id., Doc. 30, at 2. If this service was ineffective, say the Roscoes, then the defendants were not parties to the case and could not have been subject to the district court's jurisdiction. Because removal is typically an issue of statutory construction, "we review a district court's determination of the propriety of removal de novo." Huffman v. Saul Holdings Ltd. Partnership, ___ F.3d ____, No. 98-5053, 1999 WL 791587, at *3 (10th Cir. Oct. 5, 1999) (citation omitted).

We conclude the Roscoes' arguments lack merit. First, the documents before the district court were sufficient to permit removal. To its notice of removal, Freddie Mac attached copies of the summonses served on itself and Bank United, the Roscoes' complaint, and each document appended to the complaint. No more was required under 28 U.S.C. § 1446. See 28 U.S.C. § 1446(a) (stating that a defendant or defendants "desiring to remove any civil action" shall file a notice of removal "containing a short and plain statement of

8

the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action"). Second, the Roscoes' "ineffective service" argument also fails. Putting aside the issue of whether the Roscoes could have pursued their complaint in _any_ court if they failed to serve the defendants in accordance with state law, the defendants answered the complaint and subjected themselves to the district court's jurisdiction. ROA, Docs. 2, 5. Moreover, it is clear that Freddie Mac's notice of removal was otherwise proper, since 12 U.S.C. § 1452 provided the district court with original jurisdiction over the action. [4]

## B. Default Judgment

The Roscoes' defense of their motion for a default judgment proceeds along the following lines. The Roscoes mailed summonses dated November 6, 1998 to Bank United and Freddie Mac. The defendants received these summonses on November 12, 1998. The Roscoes maintain that under New Mexico Rule 1-004(E), the defendants had 30 days from the date of the summonses (November 6) to respond to the complaint. As a result, because Freddie Mac did not file its notice of removal until December 7, 1998 – and Bank United did not file a

---

[4] The defendants also note that the Roscoes did not object to Freddie Mac's notice of removal in the district court. Given their obvious substantive deficiencies, we decline to address whether the Roscoes waived these objections by failing to raise them below.

9

responsive pleading until some time after December 7 – the district court should have entered a default judgment in the Roscoes' favor. [5] "Decisions to enter judgment by default are committed to the district court's sound discretion, and our review is for abuse of discretion." Dennis Garberg & Associates, Inc. v. Pack-Tech Int'l Corp., 115 F.3d 767, 771 (10th Cir. 1997).

The Roscoes' attack on the denial of their motion for judgment by default is unpersuasive. As an initial matter, the Roscoes failed to mention in their notice of appeal any issue connected with the district court's denial of their motion for a default judgment. ROA, Doc. 50. This alone is fatal to the Roscoes' position, for we have jurisdiction to review "only the judgment or part of the judgment designated in the notice of appeal." Averitt v. Southland Motor Inn of Oklahoma, 720 F.2d 1178, 1180 (10th Cir. 1983); accord Foote v. Spiegel, 118 F.3d 1416, 1422 (10th Cir. 1997). [6] Furthermore, even if the Roscoes had identified this issue

[5] The Roscoes further assert that Freddie Mac neglected to respond to their motion for a default judgment. This is plainly false. Although the district court inadvertently omitted the response from its minute entries, the record on appeal includes a file-stamped copy of Freddie Mac's "Response In Opposition To Plaintiffs' Application For Default Judgment." ROA, Doc. 54. The Roscoes argue that we should not consider Freddie Mac's response because Freddie Mac did not bring the omission to the district court's attention until after the case was on appeal. Whether or not the district court had the authority to correct its own minute entries after the Roscoes filed an appeal, Freddie Mac's response brief is part of the record and need not be ignored by this court.

[6] The defendants contend that the Roscoes also waived any challenge to the district court's denial of their motion for a default judgment by conceding in their

(continued...)

10

in their notice of appeal, the district court properly denied their request for judgment by default. New Mexico Rule 1-004(E) provides that a plaintiff may serve a defendant by mail with a copy of the summons, a copy of the complaint, and copies of a notice and acknowledgment form. If, however, the acknowledgment form is not returned to the plaintiff within 20 days, the plaintiff must effect personal service on the defendant. Here, Bank United and Freddie Mac never returned the acknowledgment forms, and the Roscoes did not serve the defendants personally. Accordingly, the district court correctly determined that the Roscoes' attempted service by mail was "ineffective." ROA, Doc. 30, at 2. [7] Since the defendants chose to file their answers before personal service was effected, those answers were timely and the Roscoes' motion for a default judgment was unfounded.

---

[6](...continued)
motion to withdraw that the court's order was "correct and just." Once again, the balance of our opinion makes it unnecessary for us to address this argument.

[7] Courts interpreting the former version of Federal Rule of Civil Procedure 4(c)(2)(C)(ii), which is similar to New Mexico Rule 1-004(E), likewise recognize that service by mail is "ineffective" if the defendants do not return the acknowledgment form within the allotted time period. See, e.g., Hajjiri v. First Minnesota Sav. Bank, F.S.B., 25 F.3d 677, 678 (8th Cir. 1994); Mason v. Genisco Tech. Corp., 960 F.2d 849, 852 (9th Cir. 1992); see also Tso v. Delaney, 969 F.2d 373, 375 (7th Cir. 1992) ("Service by mail . . . is not complete unless the acknowledgment form is returned by the defendant."); Carimi v. Royal Carribean Cruise Line, Inc., 959 F.2d 1344, 1347 (5th Cir. 1992) ("If mail service is attempted and the acknowledgment form is not returned, there is no service.").

## C.     Summary Judgment

We review a grant of summary judgment de novo.     <u>King of the Mountain Sports, Inc. v. Chrysler Corp.</u>, 185 F.3d 1084, 1089 (10th Cir. 1999);     <u>Martin v. Kansas</u>, 190 F.3d 1120, 1128 (10th Cir. 1999).  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When applying this standard, we "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."     <u>Martin</u>, 190 F.3d at 1129;     <u>accord</u> <u>King of the Mountain Sports</u>, 185 F.3d at 1128.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."     <u>Martin</u>, 190 F.3d at 1129 (quoting     <u>Hardy v. S.F. Phosphates Ltd. Co.</u>, 185 F.3d 1076, 1078-80 (10th Cir. 1999)).

The Roscoes object to the district court's grant of summary judgment on several grounds.  First, the Roscoes assert that the Rider was an unauthorized "amendment" to the Agreement.  In support of this argument, the Roscoes highlight an integration clause stating that the Loan Agreement "embodies the entire agreement between the parties, supersedes all prior agreements and understandings," and "may be amended only by an instrument in writing executed

12

by all of the parties hereto." ROA, Doc. 23, Exh. 4, at 2. Second, the Roscoes argue that the clause of the Agreement incorporating the Rider is only "prefatory" and not binding because it begins with the word "whereas." Third, the Roscoes aver that the Rider was invalid because there was no consideration for it. Fourth, Mr. Roscoe maintains that the Rider was disclosed "near the end of the transactions conducted at the closing meeting," Appellants' Opening Brief at 11, and that he did not fully understand the import of the Rider. [8]

These objections are, to say the least, ill-conceived. The district court properly disposed of the Roscoes' first argument:

> The prepayment rider was incorporated by reference into the note itself, attached thereto, and separately agreed upon by Mr. Roscoe. Mr. Roscoe cannot expect this Court to believe that he agreed to the terms of the note, including the attached prepayment rider, but that such rider is invalid because a prior written agreement to amend was not executed. The absurdity of such argument need not be further discussed.

ROA, Doc. 49, at 7; see also Crow v. Capitol Bankers Life Ins. Co., 891 P.2d 1206, 1210-11 (N.M. 1995) ("If two or more writings are part of a single

---

[8] The Roscoes make several other arguments in passing. For instance, the Roscoes assert that "[t]here are more than two plausible interpretations of the Loan Agreement." Appellants' Opening Brief at 20. In support of this argument, however, the Roscoes merely restate their position that the Rider impermissibly "amended" the contract. The Roscoes also claim that there are disputed issues of material fact, but do not support this argument with citations to evidence in the record. Instead, they again restate their position that the Rider "amended" the contract and could not have been incorporated into the Agreement through a non-binding "whereas" clause.

transaction and concern the same subject matter, then they are a single contract."). The Roscoes' second argument fares no better. The Roscoes cite no authority to show that the language in the contract preceded by the word "whereas" should simply be disregarded. In any event, even if the language in the "whereas" clause was not strictly "binding," it notified the Roscoes that the Note and the Rider – which were signed by all interested parties – were part of the loan transaction. The Roscoes' third argument similarly ignores the plain language of the contract. In exchange for their consent to the terms of the Agreement, the Roscoes received a loan worth $2,325,000. The Roscoes expressly acknowledged that "the prepayment premium provisions of th[e] Rider are a material part of the consideration for the [l]oan." ROA, Doc. 23, Exh. 7, at 3. Finally, the Roscoes' fourth argument lacks evidentiary support. The only evidence cited by the Roscoes on this point is an affidavit executed by Mr. Roscoe that was not presented to the district court. "In reviewing a grant of summary judgment, we do not consider materials not before the district court." Myers v. Oklahoma County Bd. of County Commissioners, 151 F.3d 1313, 1319 (10th Cir. 1998) (citing John Hancock Mut. Life Ins. Co. v. Wiseman, 27 F.3d 500, 506 (10th Cir. 1994)). [9]

---

[9] Even if this affidavit had been presented to the district court, it would have been insufficient to forestall summary judgment. Over the last 30 years, Mr. Roscoe (who has a Ph.D. from Johns Hopkins University in electrical engineering) has purchased 10 to 12 income-producing properties. ROA, Doc.

(continued...)

14

The Roscoes additionally argue that the district court improperly granted

summary judgment on all claims asserted in the complaint. According to the

Roscoes, the defendants sought judgment as a matter of law only on claims one

("The Rider is Unenforceable"), three ("Express Consideration For the

Prepayment Premium is Absent"), and five ("Rider is Illegal Promise"). See

ROA, Doc. 1, Exh. A, at 3, 5, 6; id., Doc. 23. The Roscoes maintain that by

---

[9](...continued)
23, Exh. 1, at 4-5, 8, 68-69. Mr. Roscoe was familiar with prepayment premiums, having paid such a penalty to another Freddie Mac lender before entering into the contract with Bank United. Id., Doc. 44, Exh. A, at 11, 19-22. The defendants informed Mr. Roscoe several weeks before the Agreement was executed that the contract would include a prepayment premium provision. See id., Doc. 23, Exh. 3, at 1-2, 6. Mr. Roscoe was given an opportunity to review the Rider and other loan documents, read the Rider before signing it, and was capable of understanding the mathematical formula for calculating the premium. Id., Exh. 1, at 25, 68-69, 105-06. Given Mr. Roscoe's background, the circumstances surrounding the execution of the Agreement, and his obligation to carefully review the contract under New Mexico law, see Smith v. Price's Creameries, 650 P.2d 825, 829 (N.M. 1982) ("Each party to a contract has a duty to read and familiarize himself with its contents before he signs and delivers it . . . ."), his proclaimed ignorance of the meaning of the prepayment premium provision is highly suspect. Mr. Roscoe's own deposition testimony speaks volumes: "I knew the prepayment penalty before I signed on with the loan . . . . I thought I would be a good enough investor that maybe I could overcome this prepayment penalty, [this] high amount, so it was a business decision at that point to pay it." ROA, Doc. 23, Exh. 1, at 87-88. If that were not enough, Mr. Roscoe's professed ignorance appears to be immaterial to most of the issues raised on appeal. Our cases make clear that "only material factual disputes preclude summary judgment," and a party cannot avoid judgment as a matter of law by submitting "conclusory and self-serving" affidavits. Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991); accord Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995).

15

failing to challenge them in their motion for summary judgment, the defendants "conceded" their claims for unjust enrichment, relief under a state statute prohibiting "prepayment premiums on loans secured by residential property," unconscionability and breach of the implied covenant of good faith and fair dealing, consumer fraud and deceptive business practices, and tortious interference with contract.

The Roscoes' assertion that a defendant "concedes" liability by choosing not to file a motion for summary judgment is obviously incorrect, but their argument that the district court should not have dismissed the complaint in its entirety requires more analysis. In its motion for summary judgment, Bank United repeatedly emphasized that it was seeking judgment as a matter of law "on all claims asserted against it in Plaintiffs' Complaint." ROA, Doc. 23, at 1, 3, 19. However, as the Roscoes accurately note, Bank United did not analyze the complaint on a claim-by-claim basis. Instead, Bank United argued that certain uncontested facts "establish[ed] that the Prepayment Rider was an integral part of the loan transaction . . . which was freely and knowledgeably entered into and of reciprocal benefit to both Bank United and the Plaintiffs." Id. at 8. Citing cases from New Mexico and other jurisdictions, Bank United then argued that (1) "where . . . the terms of a contract are freely and knowledgeably agreed upon by the parties, the duty of the courts is to enforce the contract," id.; and (2)

16

prepayment premiums are "fully enforceable" when "a borrower voluntarily prepays a note prior to maturity." Id. at 11. In connection with these arguments, Bank United also discussed principles of fraud, mistake, illegality, unreasonableness, and unconscionability. Id. at 9, 16-18; see also id., Doc. 44, at 2-3 (indicating that Freddie Mac also discussed principles of illegality and unconscionability in its supplement to Bank United's summary judgment motion).

Even though Bank United did not dedicate a specific section in its summary judgment motion to each of the Roscoes' claims, we conclude that the district court properly dismissed the complaint in its entirety. As one commentator has explained in an analogous context,

> [t]he major concern in cases in which the court wants to enter summary judgment without a Rule 56 motion by either party is not really one of power. . . . Rather, the question raised by the court's action is whether the party against whom the judgment will be entered was given sufficient advance notice and an adequate opportunity to demonstrate why summary judgment should not be granted. If no opportunity is provided, then obviously summary judgment should not be entered. If the court provides this opportunity, however, there seems to be no reason for preventing the court from acting on its own. To conclude otherwise would result in unnecessary trials and would be inconsistent with the objective of Rule 56 of expediting the disposition of cases.

10A Charles Alan Wright et al., Federal Practice and Procedure § 2720, at 339-45 (3d ed. 1998) (footnotes omitted); see also Howell Petroleum Corp. v. Leben Oil Corp., 976 F.2d 614, 620 (10th Cir. 1992) ("[A] district court in appropriate circumstances may grant summary judgment on a ground not formally raised in a

17

summary judgment motion."); Durtsche v. American Colloid Co., 958 F.2d 1007, 1009 n.1 (10th Cir. 1992) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgment sua sponte.") (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986)). Applying these criteria to the case at hand, it is evident that the Roscoes were given sufficient advance notice and an adequate opportunity to demonstrate why summary judgment should not have been granted on all of their claims. Bank United clearly stated that it was seeking judgment as a matter of law on each of the Roscoes' claims. The evidence submitted by Bank United demonstrated that several facts relevant to all of the Roscoes' claims were incontestable. The Roscoes were given an opportunity to submit a response to Bank United's motion, which they did. In short, the Roscoes' claim that they could not have anticipated that the district court was poised to dismiss the complaint cannot be squared with the record. [10]

---

[10] The Roscoes asserted below and reiterate on appeal that they did not have an opportunity to conduct discovery before the district court granted the defendants' motions for summary judgment. However, the "facts" the Roscoes claim they had no opportunity to discover are largely (if not wholly) irrelevant to the issues resolved by the district court. See Appellants' Opening Brief at 19-20. Moreover, if the Roscoes believed they needed additional discovery, their proper recourse was to file a motion accompanied by an affidavit pursuant to Federal Rule of Civil Procedure 56(f). As we observed in International Surplus Lines Ins. Co. v. Wyoming Coal Refining Sys., Inc., 52 F.3d 901 (10th Cir. 1995):

"Although the Supreme Court has held that, under Fed. R. Civ. P. 56(f), summary judgment [should] be refused where the nonmoving

(continued...)

With one exception ( _see_ _infra_ at 23-25), our rejection of the Roscoes' "lack of notice" argument resolves all of the issues raised in this appeal. In their appellate brief, the Roscoes do not cite _any_ authority to rebut the district court's conclusion that their claims for unjust enrichment, tortious interference, unconscionability, and breach of the implied covenant of good faith fail as a matter of law. Nor do the Roscoes highlight any evidence in the record to support these claims; they simply repeat the allegations in their complaint. _Compare_ ROA, Doc. 1, Exh. A, at 4-6, 7-9 (plaintiffs' complaint) _with_ Appellants' Opening Brief at 12-14, 22-26. Federal Rule of Appellate Procedure 28(a)(9)(A) provides that the appellant's initial brief must contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies . . . ." In the same vein, "[a] litigant who mentions a point in passing but fails to press it 'by supporting it with pertinent authority . . .

_____

[10](...continued)
party has not had the opportunity to discover information that is essential to his opposition, this protection arises only if the nonmoving party files an affidavit explaining why he or she cannot present facts to oppose the motion." The party must state with specificity why extra time is needed and how the additional time and material will rebut the summary judgment motion. "[M]ere assertion that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable" is insufficient to invoke Rule 56(f).

Id. at 905 (first set of quotation marks added, citations omitted).

forfeits the point.'"  United States v. Callwood  , 66 F.3d 1110, 1115 n.6 (10th Cir. 1995) (quoting  Pelfresne v. Village of Williams Bay  , 917 F.2d 1017, 1023 (7th Cir. 1990));  accord  Phillips v. Calhoun  , 956 F.2d 949, 953-54 (10th Cir. 1992); see also  Primas v. City of Oklahoma City  , 958 F.2d 1506, 1511 (10th Cir. 1992) (stating that a litigant "has a duty to provide authority for any argument that he raises"). [11]

Even if we ignore the Roscoes' failure to comply with these precedents and the Federal Rules of Appellate Procedure, we cannot conclude that the district court committed reversible error. The Roscoes' "unconscionability" claim is illustrative. While a contract "may be held to be substantively unconscionable" under New Mexico law, "the threshold for such a holding is very high."  Monette

---

[11] We recognize that pro se pleadings must be "construed liberally."  Hall v. Bellmon  , 935 F.2d 1106, 1110 (10th Cir. 1991). In the context of a motion to dismiss, "this rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."  Id.  Even so, it is not the proper function of a court to "assume the role of advocate for the pro se litigant."  Id. ; see  also  United States v. Pinkey  , 548 F.2d 305, 311 (10th Cir. 1977) ("He who proceeds pro se with full knowledge and understanding of the risks does so with no greater rights than a litigant represented by a lawyer, and the trial court is under no obligation to become an 'advocate' for or to assist and guide the pro se layman through the trial thicket."). That maxim is particularly applicable here. Although the Roscoes are proceeding pro se, they are not wholly exempt from the Federal Rules of Appellate Procedure or the requirements of Federal Rule of Civil Procedure 56.

v. Tinsley, 975 P.2d 361, 365 (N.M. Ct. App. 1999). To be unconscionable a contract must be "such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." State ex rel. State Highway and Transp. Dep't v. Garley, 806 P.2d 32, 39 (N.M. 1991) (citations and internal quotation marks omitted). "The doctrine of unconscionability was intended to prevent oppression and unfair surprise, not to relieve a party of a bad bargain." Id. (citation omitted); see also Smith v. Price's Creameries, 650 P.2d 825, 829 (N.M. 1982) ("[T]he fact that some of the terms of the agreement resulted in a hard bargain or subjected a party to exposure of substantial risk, does not render a contract unconscionable where it was negotiated at arm's length, and absent an affirmative showing of mistake, fraud or illegality."). Nothing in the record (or in the language of the Rider) even comes close to suggesting that the Roscoes were victims of oppression. To the contrary, uncontested evidence indicates that the Roscoes knowingly entered into an agreement they now believe was a "bad bargain."

The Roscoes' claims for unjust enrichment, tortious interference, and relief under the Unfair Practices Act are similarly flawed. The Roscoes' unjust enrichment claim in many ways parallels their "unconscionability" claim, and fails for the same reasons. New Mexico recognizes that "[a] person receiving a benefit has been unjustly enriched if retention of the benefit would be unjust."

21

<u>Sunwest Bank of Albuquerque, N.A. v. Colucci</u>, 872 P.2d 346, 349 (N.M. 1994); <u>see</u> <u>also</u> <u>id.</u> ("Where a plaintiff has paid money in the mistaken belief that an enforceable contract exists, the plaintiff is entitled to recover the money paid, as restitution.") (citation omitted). Uncontested evidence submitted by the defendants demonstrates that the Roscoes knew or should have known that the Rider imposed a penalty for prepaying the loan. Bank United and Freddie Mac received the benefits of the bargain they negotiated with the Roscoes, and no more. The gravamen of the Roscoes' tortious interference claim is that Freddie Mac induced Bank United to breach the Agreement. <u>See</u> ROA, Doc. 1, Exh. A, at 8-9. There is no evidence to support the underlying premise of this claim, i.e., that Bank United breached the Agreement. In any case, to pursue a claim for tortious interference with existing or prospective contractual relations, a plaintiff must establish that the defendant "interfered with an improper motive or by improper means, or acted without justification or privilege." <u>Quintana v. First Interstate Bank of Albuquerque</u>, 737 P.2d 896, 898 (N.M. Ct. App. 1987). Uncontroverted evidence demonstrates that Freddie Mac's actions in this case were proper and supported by legitimate business expectations. Essential elements of the Roscoes' Unfair Practices Act claim likewise lack evidentiary support. To invoke the Unfair Practices Act, a plaintiff must show that (1) the defendant made a "false or misleading" representation; (2) the misrepresentation

22

was knowingly made "in connection with the sale, lease, rental or loan of goods or services in the extension of credit or . . . collection of debts;" (3) the misrepresentation occurred in the regular course of trade or commerce; and (4) the representation was of the type that "may, tends to or does, deceive or mislead any person." Stevenson v. Louis Dreyfus Corp., 811 P.2d 1308, 1311 (N.M. 1991) (citations omitted). No evidence indicates that the defendants knowingly made any false or misleading representations to the Roscoes in connection with the Agreement.

In contrast to their other claims, the Roscoes do cite relevant legal authority in their appellate brief to support their claim that the Rider was prohibited by state law. The Roscoes contend that the prepayment provision was precluded by § 56-8-30 of the New Mexico Residential Home Loan Act ("Act"). That section of the Act provides: "No provision in a home loan, the evidence of indebtedness of a home loan, a real estate contract or an obligation secured by a real estate mortgage requiring a penalty or premium for prepayment of the balance of the indebtedness is enforceable." N.M. Stat. Ann. § 56-8-30 (Michie 1998). The Roscoes argue that § 56-8-30 applies in this instance because "[b]y statute Freddie Mac acts to make capital available for home financing," and because the apartment property "is zoned residential by the City of Albuquerque." Appellants' Opening Brief at 24-25.

23

This claim is deficient as a matter of law as well. Section 56-8-30 does not apply to multi-unit apartment complexes like the one refinanced by the Roscoes. That much is evident from the statutory definitions of Act's operative terms:

> A. "residence" means a dwelling and the underlying real property designed for occupancy by one to four families , and includes mobile homes and condominiums;
> B. "home loan" means:
> (1) a loan made to a person, all or a substantial portion of the proceeds of which will be used to purchase, construct, improve, rehabilitate, sell a residence or refinance a loan on a residence and which loan will be secured in whole or in part by a security interest in the residence evidenced by a real estate mortgage;
> (2) the principal amount secured by a real estate mortgage on a residence when that real estate mortgage was executed by the mortgagor in connection with his purchase of the property, and the obligation secured represents part of the deferred purchase price; or
> (3) the deferred balance due under a real estate contract made for the purchase or sale of a residence . . .
> E. "real estate contract" means a contractual document creating rights and obligations between a seller and buyer of a residence under which the seller agrees to transfer legal title to the residence to the buyer after payment over time of all or part of the purchase price of the residence ;
> F. "real estate mortgage" means any document creating a security interest in a residence owned by a person to secure the payment of a home loan . . . .

N.M. Stat. Ann. § 56-8-24 (Michie 1998) (emphasis added). In short, "the Act contemplates protecting purchasers of dwellings intended to house four families or less." Naumburg v. Pattison , 711 P.2d 1387, 1390 (N.M. 1985). [12]

_____

[12] The district court did not discuss § 56-8-24 in its order dismissing the
(continued...)

24

The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

---

[12](...continued)
Roscoes' claim. Nevertheless, "we may affirm the judgment of the district court
on any grounds for which there is a record sufficient to permit conclusions of
law, even grounds not relied upon by the district court." V-1 Oil Co. v. Means,
94 F.3d 1420, 1423 (10th Cir. 1996).

25